## FARMERS' STATE BANK & TRUST CO. OF GORMAN et al. v. CENTRAL STATE BANK OF DALLAS. (No. 9459.)*

(Court of Civil Appeals of Texas. Dallas. Jan. 23, 1926. Rehearing Denied Feb. 27, 1926.)

1. **Appeal and error ⬅⬎930(3)—Facts supported by evidence and supporting judgment must be assumed as found in favor of appellee, where no findings were requested.**

Where no request was made for findings of fact and conclusions of law, every fact necessary to support judgment that finds support in evidence must be assumed as found in favor of appellee.

2. **Banks and banking ⬅⬎118.**

Evidence *held* insufficient to show that bank's vice president acted under authority of bank in executing note.

3. **Banks and banking ⬅⬎101—Bank, using proceeds of unauthorized note made by vice president, is liable on implied contract to repay money (Rev. St. 1925, art. 528).**

Bank, using proceeds of unauthorized note executed by vice president, though not liable on such note, under Rev. St. 1925, art. 528, is liable on implied contract to repay money so used.

4. **Banks and banking ⬅⬎101.**

Payee, to recover against bank on unauthorized note of bank's vice president, must show that note is legal obligation of bank, which burden is not discharged on proof that bank received proceeds of note.

5. **Banks and banking ⬅⬎114—Bank directors must promptly disaffirm action of vice president in using bank's funds to discharge unauthorized note on receiving notice thereof.**

Where bank's vice president used funds of bank in discharging unauthorized note which he had executed, it was duty of bank directors to disaffirm such action, as soon as they receive notice of it.

6. **Banks and banking ⬅⬎118—Bank's officer is assumed to be carrying out will of directors in certifying correctness of reconcilement statement after directors' consideration thereof.**

Action of bank's officer in certifying correctness of reconcilement statement of another bank, after consideration of statement by directors, is assumed to be carrying out will of such directors.

7. **Banks and banking ⬅⬎227(3).**

Evidence *held* insufficient to show that bank received proceeds of unauthorized note executed by vice president.

8. **Account stated ⬅⬎4.**

Approved reconcilement sheets sent by one bank to another have same legal effect as an "account stated."

9. **Account stated ⬅⬎11—Suit by bank to recover amount noted in reconcilement sheet, approved by it, is governed by law governing suit to reopen account stated.**

Action by one bank against another, to recover payment of unauthorized note executed by plaintiff's vice president, after approving reconcilement sheet noting such payment, is governed by same rule of law that governs suit to reopen and correct an account stated.

10. **Account stated ⬅⬎11.**

Bank, to recover amount noted in reconcilement sheet, approved by it, must show incorrectness of account reflected therein.

11. **Banks and banking ⬅⬎113—Bank held estopped to set up lack of authority of vice president in authorizing corresponding bank to charge note against its account after death of official of corresponding bank who handled transaction.**

Bank, which, during lifetime of official of corresponding bank who handled transaction, had full knowledge of use of its funds by its vice president in authorizing corresponding bank to charge note against its account, *held* estopped to set up lack of authority of vice president after death of official of corresponding bank, where, if notice of disaffirmance had been promptly given, corresponding bank could have availed itself of official's knowledge and not been compelled to rely solely on records and correspondence.

12. **Evidence ⬅⬎357—Copy of business letter, found in desk of bank official after death, held admissible, though it was not shown that original was mailed.**

Copy of business letter, found in desk of bank official after his death, written about a matter in line with his connection with bank and relating to transaction performed by him on day it bears date, *held* admissible in action involving transaction to which it related, though it was not shown that original was mailed.

———

⬅⬎For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[1] Rehearing pending.        *Writ of error refused April 20, 1926.

13. Evidence ⟨⟩71, 89—Where copy of letter was found in desk of bank official after his death relating to transaction performed by him on day it bears date, it is presumed to have been sent, and presumption is not overcome by fact of addressee's failure to find original.

Where copy of letter, found in desk of bank official after his death, related to matter in line with official's employment with bank and to a transaction performed by him on day it bears date, presumption obtains that original was sent, and such presumption is not overcome by fact that addressee failed to find original.

Appeal from District Court, Dallas County; Towne Young, Judge.

Action by the Farmers' State Bank & Trust Company of Gorman and others against the Central State Bank of Dallas. From a judgment for defendant, plaintiffs appeal. Affirmed.

R. E. Rouer and Gillis A. Johnson, both of Fort Worth, for appellants.
Love & Rutledge, of Dallas, for appellee.

JONES, C. J.  The appellants in this case are Farmers' State Bank & Trust Company of Gorman, Tex., J. L. Chapman, commissioner of insurance and banking of the state of Texas, Levi Anderson, and R. Gray Powell. The Farmers' State Bank & Trust Company was a banking corporation, incorporated under the laws of this state, with its principal place of business in Gorman, Tex.; J. L. Chapman was the qualified and acting commissioner of insurance and banking of the state of Texas; Levi P. Anderson and R. Gray Powell were special liquidating agents of the department of banking, and, in such capacity, and under the said Chapman, had charge of all the assets of the Farmers' State Bank & Trust Company, which had become insolvent and ceased to operate as a banking institution. Appellee, Central State Bank of Dallas, Tex., was and is a state banking institution, organized and operating under the laws of the state of Texas.

Appellants, by an amended petition filed in said district court on the 12th day of April, 1924, sought to recover against appellee the sum of $6,508.75, together with legal interest thereon from the 7th day of March, 1921, on the allegation that appellee, on and prior to said date of March 7, 1921, was acting as reserve agent in Dallas, Tex., for the Farmers' State Bank & Trust Company, and that on such date, by accumulated remittances, received by appellee from and for said bank on and prior to said date, had become and was indebted to the said Farmers' State Bank & Trust Company in the sum of $6,508.75; that said sum of money was held by appellee on deposit under a general account for said Farmers' State Bank & Trust Company and also for its successors and receivers, the other appellants herein, subject to their order, payable on demand; that appellee had failed and refused, though demand had often been made, to pay to appellants, or either of them, said deposit and same was wholly unpaid. The suit, as reflected by appellants' pleadings, was for money had and received.

Appellee's amended answer consisted of a general demurrer and general denial, and a special plea in which it alleged that appellant bank, on February 28, 1921, had on deposit with appellee a balance of $8,903.67; that transactions had between appellant bank and appellee were handled in part on behalf of appellant bank by W. D. Morrel, its active vice president; that, prior to said date, appellant bank had discounted notes with appellee through the said Morrel acting as its active vice president, and that said Morrel had been held out by appellant bank as such officer and as its duly authorized and acting agent, not only in the handling of notes of customers of appellant bank, but also of notes executed by the said Morrel, and that the said Morrel notes had been accepted by appellee from appellant bank as executed for its benefit and the proceeds thereof carried to the account of appellant bank, and that proceeds of such notes executed by said Morrel for and on behalf of appellant bank, prior to said date, had been appropriated and used by appellant bank for its benefit; that appellant bank had knowledge and notice of such course of dealing between it and appellee and the said actions of Morrel in behalf of appellant bank and had never made any complaint or objection thereto; that, pursuant to such course of dealing between the two banks, appellee, prior to February 28, 1921, accepted from appellant bank a note in the sum of $6,500, which was discounted by appellee on December 5, 1919, and the proceeds thereof credited to the account of appellant bank; that said note had been renewed from time to time between the said date of December 5, 1919, and said date of February 28, 1921, by the said Morrel, acting for and in behalf of appellant bank, and matured on March 1, 1921; that on March 6, 1921, appellant bank, through the said Morrel, directed appellee to charge its account with appellee with the amount of said note, which appellee did on the 7th day of March, 1921, by charging against the account of appellant bank the sum of $6,508.75, the principal and accumulated interest on said note, and forwarded said canceled note, together with a statement of the debit entry against appellant bank, and made a charge on the general ledger covering said item; that thereafter, on March 31, 1921, appellee forwarded to appellant bank a statement showing said charge made against it on March 7, 1921; that said statement so forwarded constituted a "stated account" between the

parties and showed a balance of $2,305.31 then existing in favor of appellant bank; that on April 30, 1921, appellee forwarded to appellant bank a statement of the account of appellant bank as reflected by the books of appellee, together with a reconcilement statement showing the balance in favor of appellant bank of that date, and that such reconcilement statement was returned to appellee without any correction, and that, by reason thereof, the account between appellee and appellant bank was stated up to April 30, 1921; that by reason of similar transactions had on May 31, 1921, and the signing of the reconcilement statement of said date by appellant bank through its assistant cashier, the account between the parties on said date was stated and the amount due from appellee to appellant bank agreed to be correct; that on June 15th the balance shown to have been in favor of appellant bank was paid to said bank through the payment of a draft drawn on appellee; that on the 16th day of June, 1921, appellant bank, through its authorized agent, requested specific explanation of the said entry of March 7, 1921, which embraced the charge against appellant bank of $6,508.75; that the explanation of the reason for the charge against appellant bank was made and on June 30th, 1921, a reconcilement statement was executed by appellant bank through its authorized agent; and that thereby the entire account between the two banks as furnished by appellee was agreed to by appellant bank.

Appellee, with the facts above alleged as a basis, pleaded ratification by appellant bank of the act of its officer and agent Morrel in directing appellee to charge the amount of said note against appellant bank's account. Appellee also, with said allegations as a basis, pleaded estoppel of appellant to deny the correctness of the said charge of March 7, 1921, and to deny the authority of Morrel to direct the said payment of said note. In connection therewith, and as part of its plea of estoppel, appellee, by appropriate allegations, alleged that, by reason of the action of appellant bank in acquiescing and agreeing to said act of Morrel in the payment of the note, it had been deprived of its right and its liberty to show by the said Morrel and by its own officer and agent L. H. Squires that the entries in reference to said note were made under proper authority and its rights to protect itself by legal proceeding, moral suasion, or otherwise, against Morrel, if he had acted without authority.

Appellants filed a lengthy supplemental petition in reply to appellee's answer, consisting of a general demurrer, numerous special exceptions, and a special plea, in which it alleged, in effect, that the note in question was the individual note of Morrel and known to be such by appellee, its officers, and agents; that the proceeds arising from the discount of said note was for the individual benefit of Morrel and not for the benefit of appellant bank. It denied authority from appellant bank to Morrel to execute a note in behalf of said bank, or authority to direct appellee to charge the note against its account. It also alleged that the reconcilement statement showing the manner of the discharge of said note, sent it by appellee, was held up by the said Morrel until, by false entries in appellant bank's books, he could conceal from appellant bank and its directors the fact that he had directed his individual note to be charged against appellant bank's said deposit, and that shortly after the reconcilement statement was returned to appellee he committed suicide; that during the months of March, April, and May he was wholly insolvent and at the time of his suicide his estate was insolvent, and, by reason thereof, appellee did not suffer any loss because of the failure promptly to disaffirm his said act; that, by reason of the false entries made by said Morrel, it was rendered impossible for appellant bank to discover the fraud that had been perpetrated upon it by the said Morrel during his lifetime; and that it was not from any want of diligence on its part that appellee was deprived of the testimony of the said Morrel. It was also alleged that both of said banks were state banks, regulated by the state statutes governing such institutions; that appellee knew this, and knew that under such statutes Morrel had no authority to bind appellant bank by his execution of the said note without written authority of the board of directors by means of a resolution authorizing him to so act; and that, if appellee had exercised ordinary care and diligence, it could have discovered that said Morrel was acting without authority and perpetrating a fraud against appellant bank in directing the payment of said note.

The case as made by the pleadings was tried before the court without a jury, with the result that all of appellants' exceptions were overruled and judgment entered in favor of appellee. From this judgment appellants have perfected their appeal, and have presented their contentions in this court by proper assignments of error and propositions of law appropriate to such assignments. The controlling question under these assignments of error, except as to those relating to the admission of certain evidence, is that, as a matter of law, appellants were entitled to recover the amount for which the suit was instituted; that the judgment entered by the court is both contrary to the law and unsupported by evidence. The assignments of error, except as to those relating to the admission of evidence, will not be separately discussed.

[1] No request was made by either party of the trial court for findings of fact and conclusions of law. Every fact that finds support in evidence, necessary to support the judgment of the court, must be assumed as

found by the trial court in favor of appellee. Transactions between the two banks were conducted by L. H. Squires, active vice president for appellee, and, until his death, by W. D. Morrel, active vice president of appellant bank. Morrel died by suicide in the month of May, 1921; L. H. Squires died in the month of October, 1921. The original petition in this suit was filed on January 25, 1922. This petition presents the first claim against appellee for its refund of the amount of the Morrel note. Appellant bank closed its doors as a banking institution on the 26th day of January, 1922, the day after it had instituted suit against appellee for the recovery of said sum of money, and the other appellants assumed legal control of said bank and its assets as alleged in their said petition. The amended petition, in which the commissioner of insurance and banking and his liquidating agents in charge of appellant bank made themselves parties plaintiff, was filed April 12, 1924.

[2] Appellants established by evidence that is not affirmatively contradicted that the minute books of appellant bank do not disclose any authority vested in Morrel to execute the note in question for its benefit, or that the board of directors ever ratified such action. Appellants also established by uncontradicted evidence that Morrel did not repay the appellant bank the amount of money that was paid for the liquidation of said note; also that in May, 1921, and before appellee's reconcilement statement of April 30, 1921, was returned, Morrel made, or caused to be made, some false entries in appellant bank's books, with the result that the depletion of the assets of appellant bank to the amount of the note did not appear. These false entries, however, were made in other transactions and did not purport to recoup the bank for the discharge of the Morrel note by its funds. This court, therefore, cannot indulge the presumption that the trial court found in the execution of the note in question that Morrel acted under authority of appellant bank.

The evidence warrants the following findings of fact in favor of appellee: That on March 6, 1921, the said Morrel, the active vice president of appellant bank, in charge of the matter in controversy, by letter, directed the appellee bank to charge the amount of said note against appellant bank's deposit with appellee, and that, in pursuance of such letter, on March 7, 1921, L. H. Squires, active vice president of appellee and in charge of this matter, caused to be entered in appellee's ledger a charge against appellant bank's said deposit in the sum of $6,508.75, the amount of the said note at said date, made a debit slip showing said charge, and sent the same, including the canceled note, to appellant bank on said date; that on March 31, 1921, a statement showing this charge, together with a reconcilement statement showing the depletion of appellant

bank's deposit with appellee in this sum, was mailed to appellant bank; that same was in May returned without objections; that on April 30th, following, another reconcilement statement was sent to appellant bank, certified to as correct by an agent and employé of said bank, and returned to appellee; that similar reconcilement statements of May 31st and June 30th were sent to appellant bank, certified to as correct by an employé and agent of said bank and returned in each instance to appellee; that on June 13th, in response to a request from appellant bank's assistant cashier, duplicate statements of said bank's account with appellee for March and April of that year were sent to appellant bank; that said assistant cashier, on June 16, 1920, by letter, requested to be advised fully in reference to the charge of $6,508.75 made on March 7th of that year; that on June 18th the general bookkeeper of appellee gave the information requested on June 16th, and stated that "our charge of $6,508.75 covered W. D. Morrel's note for $6,500 and past-due interest of $8.75"; that about this time, or previous thereto, appellant bank's board of directors had the matter of this charge up for discussion and that an officer and agent of the bank came to Dallas and had an interview with L. H. Squires, appellee's vice president, who handled the transaction; that some two or three other notes previous to the one in question had been executed by Morrel to appellee for the benefit of appellant bank; that said bank received the proceeds of said notes and discharged them; that Morrel had an individual account with appellee and that he executed individual notes for which he received the proceeds; that these individual notes, to the amount of $14,250, had been charged to profit and loss by appellee after Morrel's death; that the liability sheet of W. D. Morrel kept by appellee disclosed a note executed by Morrel on September 1, 1920, in the sum of $6,500 with Farmers' National Bank of Gorman, placed under the heading on said sheet of "Indorsers or Securities"; that it appeared at said time to be a renewal note, though this is the first record of the note shown by appellee's books; that on December 5, 1919, appellant bank was given credit by appellee for $6,300, with no showing as to the origin of this credit; that, during the times under inquiry, the president of the bank was not an active officer of appellant bank and the duties of such office were performed by Morrel until his death, as first vice president, and by another, as second vice president; that, by authority of the board of directors, Morrel had charge of loans and discounts with other banks.

The judgment must be sustained, if at all, on the assumption that the trial court made either or both of the following findings of fact: (a) That the bank received the proceeds of said note and retained same after

knowledge of the source from which said proceeds came, and is estopped to deny the authority of Morrel to discharge said note with its funds; or (b) that, by reason of its immediate knowledge of the manner of the note's discharge and the long acquiescence therein, appellee has been deprived of a valuable right material to its defense. If there is evidence on which the trial court could have based a finding that either or both of these facts existed, then this court cannot reverse the judgment rendered for want of evidence to sustain it.

[3] It is true that, under article 528 of the Revised Statutes 1925—

"No bank organized under the laws of this state shall ever make any bills payable, and no bills shall ever be rediscounted by such bank, except with the consent of the board of directors, said consent to be a matter of record."

Giving full effect to this statute, this note, when executed by Morrel, without compliance with the above requirement of the statute, did not become a legal obligation of appellant bank in the sense that appellee could have recovered against appellant bank in a suit based alone on this note, even though 'it be shown that said bank received the proceeds of the note.

[4] In such a suit the burden would rest on appellee to show that the note signed only by the bank's executive officer was the legal obligation of appellant bank, and this burden would not be discharged by proof that it, and not said executive officer, received the proceeds of the note, for this proof would not render the contract declared on legal. Hull v. Guaranty State Bank of Carthage (Tex. Civ. App.) 270 S. W. 191. If the bank, however, used for its own benefit the money representing the proceeds of the discount of such note, there would be implied an obligation on its part to repay the amount of money so used, for the said statute does not repeal this very just and equitable rule of law. A suit could be based on this implied contract, but not on the note. This rule will apply in the instant case.

[5, 6] Appellant bank and its board of directors were under the duty, as soon as they received notice of the use of the bank's funds in discharging the said obligation, promptly to disaffirm such action of their highest executive officer in such use of the bank's funds. The bank knew at once of this use of its funds. The bank's board of directors, not later than the first days of June, 1921, had this very matter under discussion and investigation and, of course, knew of such use of the bank's funds. About this time an officer of the bank was in Dallas and in consultation with L. H. Squires, active vice president of appellee, and the person who handled this matter continuously from its inception. After such consideration of this use of its funds, appellant bank agreed to and returned appellee's reconcilement statement of June 30th, certified to as correct. In view of the previous consideration given by the board of directors to this said charge against the bank's funds, it must be assumed that the bank's officer in certifying to the correctness of said reconcilement statement carried out the will of said board of directors.

[7-10] The evidence is not sufficient to support a finding of the trial court that appellant bank received the proceeds of the Morrel note. The evidence does show, however, that on December 5, 1919, appellee entered a credit in favor of appellant bank in the sum of $6,300. The evidence does not explain the source of this credit, nor does the evidence show that Morrel ever received credit for the proceeds of this note. The various reconcilement sheets approved by appellant bank have the same legal effect as the law gives to an "account stated." Chandler v. Meckling, 22 Tex. 36; McCamant v. Batsell, 59 Tex. 363. Appellants' suit is governed by the same rule of law that governs a suit to reopen and to correct an "account stated," and the burden rests upon appellants to establish all the facts necessary to show the incorrectness of the account as reflected by the said statements agreed to as being correct. Barkley v. Tarrant County, 53 Tex. 251; Mills v. Johnson, 23 Tex. 308. The burden rested upon appellants to show that the bank did not receive the proceeds of this note.

[11] Assuming that appellants discharged the burden of proof in the respect above mentioned, and that the judgment cannot be sustained on the assumption that the trial court found that appellant bank received the proceeds of the discount of the said note, then the question remains as to whether there is sufficient evidence to sustain the judgment on appellee's plea of estoppel. The evidence is clear that, during the lifetime of Squires, the appellant bank and its board of directors had full knowledge of the use of its funds in paying this note. The evidence is also clear that Squires had full knowledge from the beginning of the transactions relating to the Morrel note. If notice of the disaffirmance of the act of Morrel had been promptly given, appellee could have availed itself of Squires' knowledge and would not have been compelled to rest its case solely on its records and the correspondence. For some time after the appellant bank had notice of said transaction, Morrel's evidence was available to appellee and Morrel knew under what authority he acted in the matter and who received the proceeds of the note. The evidence warrants the conclusion that the appellant bank and its board of directors were satisfied that the charge against the bank's deposit of March 7, 1921, was a just charge, as they acquiesced therein until after the death of Squires. This acquiescence can only be explained on the theory that Squires had explained the justness of the charge and the liability of appellant bank. It necessarily

follows that appellee suffered an injury by reason of the delay of appellant bank until after the death of Squires to disaffirm the action of Morrel in his said use of the bank funds, and that, because of this injury to appellee, appellants cannot now be heard to complain and the trial court was warranted from the evidence in finding for appellee on its plea of estoppel. Fifth National Bank of San Antonio v. Iron City National Bank of Llano, 92 Tex. 436, 49 S. W. 368, 92 Tex. 436. All assignments of error to the effect that the judgment is not sustained by the evidence are overruled.

It is urged by appellant bank that the court erred in admitting, over its timely objection, a copy of appellee's letter written by Squires of date March 7, 1921, containing, among other things, the following:

"Agreeable with instructions from you yesterday, I charged your account to-day with the note for $6,500 and sent it to you. In return for this you may charge our account with the note of $10,000 you are handling for us, and send in."

[12, 13] This copy was found in Squires' desk among other files of the bank after his death. It was not affirmatively shown that the original was sent to appellant bank or any of its officers. We think this objection goes more to the weight of the evidence, for if it was sent and received by Morrel as vice president of the bank, it clearly would not be hearsay. The presumption obtains that it was sent and the mere fact that appellant bank failed to find the original does not overcome this presumption. It was a letter written about a matter in line with Squires' connection with the bank, and related to a transaction performed by him on the day it bears date, in which he was under the duty of sending such letter with the debit slip inclosed to appellant bank. We overrule this assignment of error.

We have carefully considered all other assignments of error, and are of the opinion that no reversible error is committed, and that the cause should be affirmed.

Affirmed.