SOUTHLAND LIFE INSURANCE COMPANY V.
MRS. NINA MARIE GREENWADE.

No. 7807. Decided February 11, 1942.
Rehearing overruled March 18, 1942.
(159 S. W., 2d Series, 854.)

*Carpenter & Carpenter, Andrew V. Allison, and Malone, Lipscomb, White & Seay,* all of Dallas, for plaintiff in error.

The mere mailing of a check does not constitute payment of a life insurance premium, where it is proven by direct evidence that the check is never received by the company. Roth v. Travelers Protective Assn., 102 Texas 241, 115 S. W. 31; Kansas City Life Ins. Co. v. Elmore, 226 S. W. 709; Texas Mutual Life

Ins. Co. v. Tolbert, 134 Texas 419, 136 S. W. (2d) 584. National Aid Life Assn. v. Driskill, 138 S. W. (2d) 238.

*Morrow & Calvert,* of Hillsboro, for defendant in error.

The evidence being sufficient to support a finding that insured mailed the letter by depositing same in the post office, duly addressed and stamped, raised the presumption that it was received by the company at its office in due course of mail, and the denial of such fact by the officers of the company was not conclusive but left a fact to be determined by the court. 17 Tex. Jur. 273; Lone Star Ins. Union v. Blassengame, 162 S. W. 6; Hobson v. Wise Co. Home Protective Assn., 214 S. W. 583.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

Mrs. Nina Marie Greenwade, plaintiff, sued the Southland Life Insurance Company to recover upon two policies issued on September 9, 1936, on the life of John Leonard Greenwade for the sum of $1,000.00 each, naming plaintiff, his wife, as beneficiary. Trial was before the court without a jury. Plaintiff recovered and the judgment was affirmed by the Waco Court of Civil Appeals. 143 S. W. (2d) 648.

The policies were delivered on September 9, 1936. The premiums were payable quarterly ($4.46 on each policy) on the 9th day of March, June, September and December of each year. The insured died from injury on July 18, 1938. The grace period in question expired on July 11, 1938, due to the fact that July 10 that year was Sunday. Plaintiff alleges that the insured duly mailed to the company a letter on July 9th, 1938, enclosing a check drawn by him on the First National Bank of Whitney, Texas, in the amount of the two premiums, that the company received it in due course of mail the following day, and that such receipt was in time to prevent forfeiture of the policies. The company denied liability on the ground the policies lapsed for nonpayment of premium.

The testimony stated most strongly for plaintiff is that the insured, on Saturday afternoon, July 9, 1938, left the work he and his brother were engaged in at the home of insured to go to Whitney for the sole purpose of paying his insurance,

and an account to Gates Rubber Company. To that end he went to his desk, took out the notices from the insurance company and wrote two checks, one of which was to the Southland Life Insurance Company for $8.92, and the other for $5.00 to the rubber company; that he addressed two envelopes, stamped them with three cent stamps, put the two checks in the two envelopes. Witness Mallory was waiting outside in his car to take the insured to Whitney. While still in the car, and before the insured got out, he saw two letters in the insured's hand and remembered that one of them was addressed to Southland Life Insurance Company at Dallas. At Whitney Bob Walker, who was employed at a grocery store just across the street from the post office, saw insured come into the store with two letters in his hand and walk on through and out the front door toward the post office. Witness Barnes saw him in front of the post office where he had come from the grocery; that "he passed by and said he was going to the post office first and came back out and stopped"; that he had what "looked like a couple of letters in his hand" as he went into the post office and had nothing in his hand when he came out. Witness Behringer saw the insured on that occasion in the street in front of the grocery store and walked with him from there to the post office; that the insured "dropped two letters in the mail box"; that he (Behringer) had some mail and after seeing the insured "mail two letters" dropped his in right behind him. Whitney, it was shown, is a railroad town 75 miles from Dallas. The vice-president and cashier of the First National Bank of Whitney stated that letters mailed at Whitney addressed to Dallas would, in the usual course of mail, be there the next day. He testified further that by virtue of a deposit made on July 12, 1938, the insured had $22.74 to his credit in the bank and that such date was the earliest upon which a check duly mailed at Whitney on July 9 to an addressee at Dallas would have reached the bank in the ordinary course of business.

It appears from the foregoing brief statement of the testimony from plaintiff's viewpoint that there was substantial evidence to raise and support the conclusion, prima facie, that the check was received by the company within the grace period. In other words, as will presently be shown according to the established law of this State, the letter, being properly addressed, stamped and mailed, a rebuttal presumption of fact arose that it was received by the company in the usual course of the mails. (All italics herein are ours.)

The San Antonio Court of Civil Appeals so stated nearly fifty years ago (1894) in Manhattan Life Insurance Company v. Fields, 26 S. W. 280. See opinion of same court in Opet v. Denzer, Goodhart & Schener, 93 S. W. 527. The Galveston Court, in Pink Front Bankruptcy Store v. Mistrot & Company, 40 Texas Civ. App., 375, 90 S. W. 75, a case having peculiar pertinency under the present facts, so held after pointing out that plaintiffs denied the check had ever reached the store, saying "defendant's evidence presented the issue and it should have been properly submitted to the jury." The Waco Court, in Davis v. Petroleum Casualty Company, 13 S. W. (2d) 981, reached the same conclusion, citing the cases above referred to, together with others to the same effect. In Smith v. Heitman Co., 98 S. W. 1074 (wr. ref.), the Galveston Court points out that the fact of the proper mailing of a duly addressed and stamped letter "may be shown by circumstances," and that the custom of a business house with regard to the disposition of letters sent out by it through the mail should be admissible as such a circumstance, "and sufficient to uphold an inference by the jury that such letter * * * was received by the addressee." This court refused defendant's application for writ of error in that case. In Curtis & Co. Mfg. Co. v. Douglas, et al, 79 Texas 167, 15 S. W. 154, another case peculiarly applicable to the facts of the present case, and which turned upon whether a letter was received prior to December 22nd, this court points out that it was for the jury to determine when the check was actually received, notwithstanding the evidence tending to show it was received before December 22nd, was circumstantial; and further that the jury must have come to the conclusion appellant received the check in the usual course of mail," and that if it did it could not be held "it used proper diligence to collect it."

The latest letter-mailing case by this court upon the question immediately under consideration is American Nat. Ins. Co. v. Callahan, 125 Texas 222, 81 S. W. (2d) 504. The court speaking through an adopted opinion by the Commission of Appeals points out that early in January, 1930, the insured "wrote and duly mailed at Dallas a letter to the company, duly addressed to the company at its home office," and that "company officials testified that it was never received by them"; and that liability under the policy depended on "whether or not, at the time the insured died, the policy had lapsed on account of the non-payment of the premium." In directing an affirmance of the judgments below in favor of plaintiff the opinion states that

the *due mailing* of the letter at Dallas *"affords a legal basis for a fact finding that it was received by the company at the company's office in Galveston, in due course of mail."*

■ There is practical unanimity in the decisions that *a presumption of some character* arises upon such a state of facts that the letter was duly received in the course of the mails, variously designated as an "inference," or a "presumption of fact," or a "legal presumption," or a "real presumption," or an "administrative assumption"; and frequently as merely a "presumption." It is settled in this state, however, that when a letter properly addressed and with postage prepaid is mailed, a presumption of fact (rebuttable of course) arises that it was duly received by the addressee. See cases quoted from above; also 17 Tex. Jur. p. 273, sec. 74; Supp. 1937, p. 1238, sec. 74; Supp. 1940, p. 301, sec. 74; McCormick & Ray's Texas Law of Evidence, pp. 126-7, sec. 70; Wichita Valley Ry. Co. v. Davis, 275 S. W. 169; and Farmers State Bank & Trust Co. of Gorman et al v. Central State Bank of Dallas (wr. ref.), 281 S. W. 632.

■ It is the law of this State also that under a state of facts similar to that just stated, in the absence of evidence of the contrary, the presumption has the force of a rule of law. See cases, supra; also McCormick & Ray, supra, pp. 57-8, sec. 36.

Rebuttal testimony was adduced however by the company in the present case. It is truly reflected by the following excerpt from the opinion of the Court of Civil Appeals:

"The record discloses that the postal authorities at Dallas securely tied defendant's mail in packages and delivered it to defendant's employee, who placed it in a sack and carried it to the home office where it was carefully opened and inspected under the supervision of the head of the premium accounting department. Checks received were clipped to the envelopes in which they came and these checks were registered in a book before the envelopes were taken off. The pages of this book were dated for each day's receipts and contained the number of the policy, the date of the check, and the name of the person signed to the check. These records were then checked with the premium cards of the company before the checks were turned over to the cashier. * * * The evidence was uncontradicted to the effect that defendant accepted checks to apply on premiums

and issued its receipt, with the understanding that if the check was not paid the receipt was a conditional receipt."

It is not contended by the company that the evidence of the receipt of the letter adduced by plaintiff is not substantial or that it does not tend to support a fact finding that it received the letter within the grace period. The company's contention, reduced to proposition form as substantially stated in the application for writ of error, is that the "presumption of fact that the mailed letter was received" vanished when its evidence tending to show the letter was not received, was introduced. Such is not the majority rule, and is certainly not the rule in this State. Empire Gas & Fuel Co. v. Muegee (Com. App.), 135 Texas 520, 143 S. W. (2d) 763; Langlitz v. American Nat. Ins. Co. (wr. dis.), 146 S. W. (2d) 484; McCormick & Ray, pp. 58-9, sec. 37, and other cases above cited.

■ We agree with the company's contention that a presumption, as such, is not evidence and that it vanished as such in view of the opposing evidence; but we do not agree that the evidentiary facts upon which it was established, could no longer be considered by the trier of the facts. Wigmore on Evidence (2d Ed.), sec. 2491. The section just cited states that if substantial contrary evidence is offered "the presumption disappears *as a rule of law, and the case is in the jury's hands free from any rule*," and that "it is therefore a fallacy to attribute probative force to a presumption, increasing for the jury the weight of the facts, *even when the opponent has come forward with some evidence to the contrary.*"

The foregoing statement is quoted in an annotation upon the subject in 95 A. L. R. p. 880, as "the rule which is approved by most text writers and the majority of the courts which have discussed the subject." In a comment note beginning at 121 A. L. R. 1078, the following statement of the rule as to whether a presumption is in the nature of evidence to be weighed as such against probative facts to the contrary, is made:

"The majority of courts adhere to the view that a presumption of law, as such, is not in the nature of *evidence and has no probative force,* and that when some *substantial evidence* has been introduced tending to overcome the presumption, it disappears entirely from the case. * * * It is clear, however, *that the facts and circumstances which are the basis of a presumption are themselves evidence to be considered by the jury.* In

such cases, it is not *the presumption* that the jury considers, as such; *they merely consider the facts and draw inference therefrom."*

American Jurisprudence, Vol. 20, sec. 166, states the general rule thus:

"The facts which gave rise to a presumption, as distinguished from the presumption itself, are evidentary; those facts, *when established by evidence,* remain in the record and may be properly considered by the jury *as they tend to sustain a finding of fact* presumed, no matter what other facts the record may reveal. It is not the presumption or inference that the jury considers in such cases, but only the facts and whatever inference flow therefrom."

The prima facie case of due receipt of the letter made out by plaintiff in the present case is not *conclusively rebutted* by the company's evidence tending to establish it was not received; nor is such evidence *so clear, positive and disinterested* as to overcome (other than as a rule of law) the presumption of fact in the insured's favor.

■ We are not in accord with the holding of the case of National Aid Life Ass'n v. Driskill, 138 S. W. (2d) 238 cited by defendant, to the effect that it is the function of the court (rather than the trier of the facts) when there are opposing inferences (each supported by substantial probative evidence), to determine which inference is more reasonable or probable. We hold that an inference established prima facie (as in the present case) is overcome, together with the evidentiary facts tending to establish it, only when the evidence tending to support the contrary inference is conclusive, or so clear, positive and disinterested that it would be unreasonable not to give effect to it as conclusive. Authorities cited supra; also Empire Gas & Fuel Co., supra; Simonds v. Stanolind Oil & Gas Co., 134 Texas 332, 136 S. W. (2d) 207; East Tex. Fire Ins. Co. v. Perkey, 89 Texas 604, 39 S. W. 1050; Western Union Tel. Co. v. McDavid, 103 Texas 601, 132 S. W. 115; American Central Ins. Co. v. Heath, 29 Texas Civ. App., 445; 69 S. W. 235. As stated tersely in the Stanolind Oil case, (supra) "prima facie evidence and presumptions of facts disappear when the true facts are *conclusively shown by other evidence";* or, as stated in the Empire Gas case opinion after it is shown the opposing evidence was clear, positive and uncontradicted, "it is settled

in this State, and by the weight of authority elsewhere, that such presumption is * * * an 'administrative assumption' which 'vanishes' * * * when positive evidence to the contrary is introduced." In other words presumptions, when controverted by facts, disappear, as such, and cannot be weighed *as evidence* against such facts.

■ The trial court's award of judgment in favor of plaintiff implies a finding that the company after receiving the check failed to use proper diligence to collect it. The letter mailed at Whitney on July 9, 1938, and in due course of mail, would have reached Dallas the following day and would have been delivered at the company's office in due course not later than Monday, July 11th. The testimony shows that the insured uniformly paid his premiums by check. It discloses that the premiums maturing on December 9th, 1937, were paid by his check dated January 7, 1938, and that it was cleared through the Federal Reserve Bank at Dallas on January 12th, after the grace period had expired. The premiums due March 9, 1938, were paid by check dated April 8, 1938, which cleared through the same bank on April 13th following the expiration of the grace period. The January check was paid by the Whitney bank on January 13th and the April check on April 13th, both subsequent to the expiration of the grace period. The checks referred to were drawn, as were the checks given in payment of the premiums now in question, on the bank at Whitney.

The company having failed to use diligence to collect the check is not in position to refuse to pay the policies. Curtis & Co. Mfg. Co. v. Douglas and Pink Front Bankruptcy Store v. Mistrot & Co., supra. As stated in the Curtis Company case in affirming a judgment for plaintiff upon such finding, "the jury (trial court in the present case) must have come to the conclusion that appellant received the check in the usual course of mail, and if it did, it cannot be held that it used proper diligence to collect it; *or at least the finding * * * which involves a finding that due diligence was not used, is not wtihout sufficient evidence to support it.*" The italicised statement is pertinently applicable in the present case in the light of the testimony of vice-president Winkleman of the Whitney bank that the earliest date upon which a check mailed there on July 9th addressed to the company at Dallas would have reached his bank in the ordinary course of business, was July 12th, on which date the books of the bank showed the insured had to his credit a sum more than sufficient to pay the premiums.

The company's contentions under its first assignment are overruled.

The only other assignment presented by the application for the writ is that the Court of Civil Appeals erred in affirming the action of the trial court in reopening the case and permitting plaintiff to adduce evidence after both parties had rested. We approve the Court's holding upon this point and overrule the assignment.

The judgment of the Court of Civil Appeals affirming that of the trial court is affirmed.

Opinion adopted by the Supreme Court February 11, 1942.

Rehearing overruled March 18, 1942.