**EMPLOYERS' NATIONAL LIFE INSUR-
ANCE CO. OF DALLAS, TEX-
AS, Appellant,**

v.

**Frances WILLITS, Appellee.**

No. 7889.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 18, 1968.

Rehearing Denied Dec. 16, 1968.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellant; R. A. Wilson, Amarillo, of counsel.

Kolander & Templeton, Amarillo, for appellee; Robert L. Templeton, Amarillo, of counsel.

CHAPMAN, Justice.

The subject matter of this suit involves the timely payment of a premium on a life insurance policy on the life of Harry Lee Willits, deceased, under a letter extension agreement made by the insurer. Employers' National Life Insurance Co. of Dallas, Texas, is the appellant defendant insurer. Frances Willits, widow of Harry Lee Willits, deceased, beneficiary in the subject policy of insurance, is the plaintiff appellee.

The case was tried to a jury upon five special issues inquiring (1) if the money order of $20.50 was mailed at such time for the defendant to receive it in due course of the mails before the death of Mr. Willits; (2) if the money order was mailed to insurer on September 11, 1964; (3) if the money order was received at the post office box of insurer before the death of the insured; (4) if the money order was received at the home office of insurer before the death of Mr. Willits; and (5) if the bank draft of August 7, 1964 was accepted as payment on the policy of insurance in question. To each inquiry the jury answered affirmatively. Judgment was rendered upon the verdict and appeal is perfected by the insurer upon eleven points of asserted error.

Appellant issued a policy of insurance upon the life of Harry Lee Willits on November 7, 1963. The premiums of $20.50 were to be made monthly by a monthly bank check plan authorizing insurer to draw checks on insured's bank account at the First State Bank of Amarillo, Texas. The name of the bank was later changed to Bank of the Southwest, Amarillo, Texas.

The August 7, 1964 check drawn in compliance with the monthly bank check plan was returned by the bank for insufficient funds. On September 2, 1964, appellant wrote a letter to appellee waiving any policy forfeiture provisions, and extended time for payment of the premium under the conditions that the premium payment " * * * be received at the home office of the company * * * during the lifetime of the insured * * * and within 60 days from the due date shown on the premium notice." It is without question that the money order for the August 7, 1964 premium was received within the 60-day provision, so that condition is not in issue. It is also without question that the letter premium extension was received within the 31-day grace period.

Honoring the inferences which must be resolved in favor of a judgment based upon a jury verdict,[1] it is also established that deceased Willits bought a money order at the downtown Amarillo Post Office on September 11, 1964 for the amount of the August 7, 1964 premium, placed it in a

1. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696, 698 (1914); Ford v. Panhandle & S. F. Ry. Co., 151 Tex. 538, 252 S.W.2d 561, 562 (1952); Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359, 363 (1957).

post office-purchased stamped envelope hand addressed by deceased to appellant and mailed it during the time between his lunch period on September 11, 1964 and the time he went back to work as a construction superintendent that afternoon. It is also without question that on the afternoon of September 14, 1964, three days after the money order premium payment had been mailed to appellant, Mr. Willits was accidentally killed in a street cave-in. The certificate of death shows death occurred at 4:30 P.M. September 14, 1964.

The testimony by answers to interrogatories propounded to appellant before trial shows the money order was found by Doris Stewart, an employee of appellant, on September 15, 1964, that it had stamped thereon the purchaser's name, the date of September 11, 1964, and that insurer did not claim anyone in its office saw the money order or any envelope in which it was contained at the time or date when it first came into its possession.

A. W. Phanmiller, a postal inspector of Potter and neighboring counties, testified as a witness for appellee that the subject money order was purchased on September 11, 1964. The envelope introduced by insurer as the one in which the money order was found on Doris Stewart's desk on September 15, 1964 shows a September 14, Amarillo postmark or cancellation. Mr. Phanmiller testified it was possible that people at the post office could make a mistake as to the time and date of the postmark and that it has occurred that postmarks have been incorrect as to P.M.'s and dates; that a letter mailed in the downtown Amarillo Post Office in the afternoon would reach Dallas by 6:30 or 7:00 the next morning in due course of mail, would be distributed through the primary sorting case, separated and delivered, divided up to the routes or to the box sections and then processed and placed at the carrier's desk or the post office box. He testified it would be unusual for a period of three days to elapse from the time of mailing in Amarillo to receipt by addressee in Dallas.

Appellant's first group of points of asserted error of the trial court in overruling its motion for instructed verdict and motions notwithstanding the verdict raise the no evidence points of lack of compliance with the letter extension of premium payment by receipt in its home office during insured's lifetime. Therefore, we may consider only that evidence which, viewed in its most favorable light, supports the jury findings and must disregard all evidence which would lead to a contrary conclusion. Cartwright v. Canode, supra; Ford v. Panhandle & S. F. Ry. Co., supra; Biggers v. Continental Bus System, supra. Honoring these rules, and the presumption that letters which are properly addressed, stamped and mailed are received in due course, (authorities for which will be later cited) there is probative evidence that the subject money order was received by insurer before Mr. Willits' death on September 14, 1964. It is without contradiction that the money ˌorder was purchased on September 11. Deceased's son's testimony shows it was placed in an envelope, sealed, stamped, addressed to appellant, and mailed on September 11. It is also without contradiction that it was in Doris Stewart's tray on September 15 and had already been opened. Her testimony shows:

"Q. And you have no personal knowledge on what date this particular money order was put in the post office box of Employers' National Life Insurance Co.?

A. No, sir."

Mr. Phanmiller testified in effect that a letter properly mailed by ordinary mail in the downtown Amarillo Post Office on Friday afternoon, September 11, 1964, would, in due course of mail, be received sometime the next day or Saturday morning in the post office box of addressee in Dallas, Texas.

Appellant used only one witness, Doris Stewart, supervisor of accident, sickness and life administrative department of appellant insurer. She testified she received a call from insurer's salesman, Mr. Howard, about 3:00 P.M. on September 15 which caused her to make a search for a remittance or payment from Mr. Willits. She found the opened envelope, with the money order enclosed, in her tray on the cash receipts desk. She testified it did not reach her tray on September 14 but she had no personal knowledge as to the date it was placed in insurer's post office box.

There is substantial reliable authority to the effect that a letter properly addressed, stamped and mailed to the addressee is sufficient to raise a presumption that it was received in due course. Southland Life Insurance Co. v. Greenwade, 138 Tex. 450, 159 S.W.2d 854 (1942); Dawson Farmers' Elevator Co. v. Opp, 57 N.D. 598, 223 N.W. 350 (1928); J. L. Price Brokerage Co. v. Chicago, R. I. & P. Ry. Co., 207 Mo.App. 8, 230 S.W. 374 (1921); Twohig v. Denver & R. G. R. Co., 218 S.W. 897 (Kan. City, Mo., Court of Appeals, 1920); Hartford Fire Insurance Co. v. Mutual Savings & Loan Co., 193 Va. 269, 68 S.E.2d 541, 31 A.L.R.2d 1191 (1952).

The North Dakota Supreme Court case just cited quotes with authority from other cases to the effect that a general statement that a letter was mailed " * * * is sufficient evidence that he did everything necessary to raise the presumption that it was received in due course of mail."

Due mailing of the letter " * * * affords a legal basis for a fact finding that it was received by the company at the company's office * * * in due course of mail." American National Insurance Co. v. Callahan, 125 Tex. 222, 81 S.W.2d 504 (1935). Such presumption is rebuttable by proof of the company tending to show the money order was not received in due course, but not conclusively rebutted thereby "(other than as a rule of law)".

Southland Life Insurance Co. v. Greenwade, supra. Southland also holds it is not the presumption that the jury considers but the facts and circumstances forming the bases of the presumption. The evidentiary facts establishing the inferences may be overcome " * * * only when the evidence tending to support the contrary inference is conclusive, or so clear, positive and disinterested that it would be unreasonable not to give effect to it as conclusive." When these rules are applied to our facts in connection with the inferences we must honor on appeals from judgments based upon jury verdicts, it appears clear to us there was probative evidence to support an affirmative answer to Special Issue No. 4 inquiring if the money order was received at the home office during Mr. Willits' lifetime. Mr. Phanmiller was clearly a disinterested witness. His testimony that it is possible people at the post office could make a mistake as to the time and date of the postmark, that it has occurred, and that it would be unusual for a period of three days to elapse from the time of mailing in Amarillo to receipt by addressee in Dallas takes the case out of the rule of conclusiveness, in our opinion. These evidentiary facts were proper to be " * * * considered by the jury as they tend to sustain a finding of fact presumed, no matter what other facts the record may reveal." Southland Life Insurance Co. v. Greenwade, supra. The only substantial probative evidence to the contrary is the September 14 cancellation date on the envelope and the testimony that a letter mailed on that date would not, in due course of mail, reach Dallas before September 15. A fact issue was thus presented, which the jury resolved in favor of appellee.

Appellant's next group of points raise the great weight and preponderance of the evidence questions as to affirmative answers to Special Issue Nos. 3 and 4 inquiring if the money order reached the post office of insurer and its home office before Mr. Willits' death. This raises,

under Art. 5, Sec. 6 of the Constitution of Texas, Vernon's Ann.St. and Rule 451 of Texas Rules of Civil Procedure the peculiar power of this court " * * * to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust— this, regardless of whether the record contains some 'evidence of probative force' in support of the verdict." King v. King, 150 Tex. 662, 244 S.W.2d 660 (Tex.Sup. 1951).

As above detailed, the testimony shows an envelope identified as the one in which the money order was mailed with a September 14, 1964 cancellation. The testimony shows such a letter mailed in the afternoon at the downtown Amarillo Post Office would not be delivered to the addressee in Dallas in due course of mail before September 15, 1964. Doris Stewart did not find the money order in her tray until September 15. It had been opened and there is not any admissible evidence when it was received, when opened, or by whom.

As opposed to the September 14 cancellation and the due order of mail evidence, is the testimony that the money order was purchased on September 11, placed in the envelope, addressed to insurer, and mailed immediately at the downtown Amarillo Post Office; the inspector's testimony that it has occurred that the time and date of the postmark shows a mistake; and it would be most unusual for a period of three days to elapse from the time of mailing in Amarillo to receipt by addressee in Dallas. Additionally, there is more than a scintilla of evidence by which the jury could have concluded the envelope containing the money order was air mailed to Dallas. Mr. Phanmiller testified that at the time in question the Amarillo Post Office was air mailing some ordinary postage stamp mail to advance it. The evidence shows the insurer has from eight hundred to a thousand employees and that mail comes in one box to the entire operation. The jury would have the right to reason in their minds that even if the September 14 cancellation stamp was correct that the envelope could have been air mailed and reached the company's post office box, or even its office on the 14th. It would be only reasonable for the jury to assume such volume of mail would require that it be picked up at the post office more than once a day. Accordingly, we hold the answers to Special Issues 3 and 4 are not so against the great weight and preponderance of the evidence as to be manifestly unjust.

In its point seven appellant asserts the jury's answer to Special Issue 5 is against the overwhelming weight and preponderance of the evidence. This issue inquires of the jury if the bank draft of August 7, 1964 was accepted as payment on the policy in question. In view of what we have already held, writing on this point would only unnecessarily extend this opinion. The same applies to point 10.

■ In its point 8 and 9 appellant asserts reversible error in submitting Special Issues 1 and 2 for the reason they are only evidentiary, ambiguous and more burdensome than the law warrants. Those issues inquire if the money order was mailed at such time for insurer to receive it in due course of the mails before Mr. Willits' death and if it was mailed on September 11, 1964. We overrule the points. American National Ins. Co. v. Callahan, supra.

All previous payments to the company had been made by mail. The letter premium exension stated, inter alia, " * * * you can *send* us the premiums * * * in order to maintain your valuable protection. Please note your policy number on your remittance." (Emphasis added)

■ We interpret such letter to imply a direction to send by mail. Postal Indemnity Co. v. Rutherford, 49 S.W.2d 1115 (Tex.Civ.App.–Texarkana, 1932, n. w. h.).

If the rule announced in the case just cited is correct then the two issues were material and as submitted did not place a more onerous burden on appellant than the law requires. American National Ins. Co. v. Callahan, supra; Southland Life Ins. Co. v. Greenwade, supra. Under the due course of mail evidence it is very doubtful that both issues were necessary, though submission of both instead of just one of them would only be surplusage and harmless. We cannot say the submission of both issues amounted to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to this court. Rule 434, V.A.T.R.

 In its point 11 appellant asserts reversible error in excluding answers to certain interrogatories. That point is not briefed. Therefore, we may assume the point has been waived by appellant. Numerous courts have held that where points are not briefed by appellant they may be assumed as waived. Whitson Co. v. Bluff Creek Oil Co., 278 S.W.2d 339 (Tex.Civ. App.–Fort Worth, 1955, affirmed 156 Tex. 139, 293 S.W.2d 488 (Tex.Sup.); Weatherred v. Kiker, 357 S.W.2d 182 (Tex.Civ. App.–Amarillo, 1962, writ ref'd, n. r. e.); Butterfield Sales Co. v. Armstrong, 278 S.W.2d 194 (Tex.Civ.App.–Amarillo, 1954, writ ref'd, n. r. e.); Grady v. Dallas Railway & Terminal Co., 278 S.W.2d 282 (Tex. Civ.App.–Amarillo, 1954, writ ref'd, n. r. e.); Stanford v. Brooks, 298 S.W.2d 268 (Tex.Civ.App.–Fort Worth, 1957, n. w. h.); Hall v. Hall, 352 S.W.2d 765 (Tex.Civ. App.–Houston, 1962, n. w. h.); Kirkman v. Alexander, 280 S.W.2d 365 (Tex.Civ. App.–Austin, 1955, writ ref'd, n. r. e.); McClanahan v. Cook, 401 S.W.2d 352 (Tex.Civ.App.–Amarillo, 1966, n. w. h.).

The rules which we believe control this case are those announced in the Greenwade case and substantiated in a comment by the author of Vol. 5, A.L.R.3rd at Page 51 under Sec. 5, entitled "Evidentiary Value of Facts Upon Which Presumption is Based". That comment is as follows:

"It seems to be well settled that whatever effect the introduction of contrary evidence has upon a presumption, the underlying facts from which the presumption is drawn retain whatever independent evidentiary value they have and may be considered by the jury in determining the issue."

Accordingly, the judgment of the trial court is affirmed.