**L. B. PETE, Appellant,**

v.

**W. B. STEVENS, Appellee.**

No. 16179.

Court of Civil Appeals of Texas, San Antonio.

May 9, 1979.

Rehearings Denied June 13, 1979.

George H. Spencer, Clemens, Spencer, Welmaker & Finck, San Antonio, for appellant.

James S. Frost, A. J. Saegert, Threlkeld, Saegert, Saegert, Kirkendall & Frost, Seguin, for appellee.

## OPINION

MURRAY, Justice.

W. B. Stevens, appellee, brought this suit in the district court of Guadalupe County against L. B. Pete, appellant, for title and possession of stock certificates of Seguin Aviation, Inc. Appellee alleges that the stock is owned by him and was pledged to the First National Bank of Seguin to secure a note owned by the corporation, and thereafter the bank transferred the note and security to appellant. He further alleges that since the note is now paid, he is entitled to his stock. After a jury trial, the court entered judgment for appellee, and appellant then perfected his appeal to this court.

In 1966 appellee, Stevens, owned forty-six percent of the stock of Seguin Aviation, Inc., and appellant, Pete owned thirty-two percent of the corporate stock. Stevens, who was president of the corporation, borrowed money for the corporation on a regular basis from the First National Bank of Seguin. Stevens resigned as president of the corporation when asked to do so in August 1969. At this time, Seguin Aviation was still indebted to the First National Bank of Seguin. In 1970 Stevens left his share certificate representing his forty-six percent interest in Seguin Aviation, Inc., with the vice-president of First National Bank, Benton Donegan. Stevens left his stock with Donegan as security for the corporate notes, even though Donegan told him it was not necessary because Stevens signed the notes for the corporation as its president. At Donegan's request in 1971, Stevens signed a blank stock power to provide security for Louis Bishop, who was going to underwrite the indebtedness of Seguin Aviation to First National Bank. All the other shareholders of Seguin Aviation, except Pete, signed similar stock powers. Thereafter, Stevens moved from Seguin.

By August 1972, the financial condition of Seguin Aviation had deteriorated to such a point that Donegan called a special stockholders' meeting to give the company thirty days after the meeting to rectify their financial problems, or the bank would have to foreclose. Joe Zurek, the corporate secretary, sent a notice to all the shareholders, including Stevens, that a shareholders' meeting would be held on September 13, 1972. This notice specified the purpose of this meeting as the "transfer of certain shareholder's interest (stock) to Louis Bishop in return for his guarantee of the corporation's indebtedness, as per agreement of January 1970" and the "proposed reorganization of the corporation in conjunction with Mr. Bishop's controlling interest in the corporation."

On September 13, 1972, Stevens, Pete, Bishop, Zurek, Donegan, and others attended the meeting in a small room about the size of a jury box. The entire meeting was tape recorded. First, Bishop made a lengthy speech to the effect that he no longer wished to underwrite the corporation any further and would foreclose on it by exercising the stock powers to himself unless another financial backer would come forward. Near the end of the meeting, a share certificate for 766.65 shares was issued to First National Bank in its name representing all the outstanding shares in

Seguin Aviation, Inc., except Pete's 598 shares. The bank negotiated this transfer by exercising the stock powers from the shareholders in its own name. After this transfer and before the meeting adjourned, Stevens left the meeting when he was told to do so by Pete's attorney, Mr. Bayne. During the meeting, Stevens made no objections to any of the proceedings.

Subsequently, Pete contacted the bank to see if he could buy its Seguin Aviation stock. On October 4, 1972, Pete delivered his check for $170,216.90 to Donegan at First National Bank. This sum was a combination of $135,216.90 owed by Seguin Aviation to the bank on its various notes and $35,000, which was to be held in escrow by the bank for Mr. Bishop as repayment of expenses owed to him from Seguin Aviation. Donegan marked the notes paid, gave them to Pete, and signed over to Pete the stock certificate representing the 766.65 shares issued in the name of the bank at the September 13, 1972, meeting.

Over the years, Seguin Aviation repaid Pete for his investment. At a shareholders' meeting in June 1977, the employee stockholders requested that since a substantial part of the original purchase price of the stock had been repaid to Pete by the corporation, the stock should be returned to the corporation's treasury. Pete agreed. At this meeting, there was no mention or claim that Stevens had any interest in the stock.

Appellant contends that the stock transfer from the bank to Pete was an unqualified sale of the corporation. Pete testified that he did not acquire the debt of the corporation alone, but the whole corporation. The trial court, however, submitted the case to the jury according to appellee's theory that Pete had purchased only the indebtedness of the corporation and held the stock in pledge as collateral for the corporate notes. As a result, special issue number one read as follows:

> "What do you find from a preponderance of the evidence was the amount of the indebtedness of Seguin Aviation, Inc. to First National Bank of Seguin which was purchased by L. B. Pete?"

The jury answered this issue $135,216.90. The jury also found that this amount of indebtedness had been paid to appellant by the corporation. Upon these issues, the trial court entered judgment for appellee giving him title to the stock.

Appellant objected to the charge on the ground that these issues erroneously assumed that appellant had merely purchased the indebtedness of the corporation and not the stock. We agree.

Appellee argues that appellant wholly failed to overcome the presumption raised by the uncontradicted testimony that the stock originally had been given as a pledge to the First National Bank of Seguin, and the stock continued to exist as a pledge after Pete acquired it. Accordingly, appellee contends, as a matter of law, that appellant, Pete, bought the note from the bank and not the stock. Throughout the trial, appellee contended that ownership of the stock was not a relevant or material issue. In this case, however, ownership was in issue because the controlling question is whether the bank held the stock as pledgee when it transferred the stock to appellant on October 4, 1972.

The burden of establishing this fact was on Stevens, who was plaintiff in the district court, because a presumption does not shift the burden of persuasion from one party to another. 1 C. McCormick & R. Ray, Texas Law of Evidence § 53 (Texas Practice 2d ed. 1956). See *Mexican Central Railway Co. v. Lauricella*, 87 Tex. 277, 28 S.W. 277 (1894). Nevertheless, the fact that the stock was originally pledged to the bank creates a presumption that it was still pledged in October 1972, but this presumption is rebuttable. Pete had the burden of producing evidence to overcome the prima facie case established by the presumption. *Empire Gas & Fuel Co. v. Muegge*, 135 Tex. 520, 143 S.W.2d 763 (1940). In absence of evidence to the contrary, this presumption, that the state of things once shown to exist continues, would be conclusively established. *Moore v. Wooten*, 280 S.W. 742 (Tex.Comm'n App.1931, holding approved); *Strain v. Martin*, 183

S.W.2d 246 (Tex.Civ.App.—Eastland 1944, no writ).

■ In this case, however, evidence was introduced to rebut this presumption. The record discloses that the corporation was in financial straits and outside financial support was necessary for the corporation to stay in business. It is apparent that the meeting of September 1972 was called for this purpose. Mr. Donegan, vice-president of the First National Bank of Seguin, testified that he was closely involved with the business and was familiar with all the assets of the corporation. From this knowledge, he stated that the assets were worth approximately $40,000 less than the corporation's debt to the bank. He further testified that in September 1972 the bank was dissatisfied with their arrangements with the corporation, and Mr. Louis Bishop or someone else was going to have to liquidate the debt. He also gave his opinion that there was no buyer who was willing to pay $170,000 to acquire only the debt of Seguin Aviation unless he also acquired a controlling interest. The transfer of the stock to the bank in its own name would put the bank in a position to readily transfer a controlling interest to Bishop or any other financial backer that could be found. Since Bishop stated at the meeting that he did not wish to continue in his present role, other investors could be considered for acquiring the controlling interests in return for continued financial support of the corporation. After the stock in question was transferred to the bank, Stevens was requested to leave the meeting because he was no longer considered a stockholder. Stevens did not object to this action, left the meeting, and made no claim to the stock for a period of five years during which time the corporation became solvent. There is substantial evidence in the record in this case to support the conclusion that Pete purchased the stock and not just the corporation's indebtedness. We hold that the trial court erred in ruling, as a matter of law, that Pete purchased the note.

■ In view of the above holding, it becomes necessary to decide what disposition should be made of this case. A presumption does not have the effect of shifting the burden of proof, and when rebuttable evidence is introduced, the presumption vanishes. *Southland Life Insurance Co. v. Greenwade*, 138 Tex. 450, 159 S.W.2d 854 (1942); *DeMuth v. Head*, 378 S.W.2d 389 (Tex.Civ.App.—Dallas 1964, writ ref'd n. r. e.). The facts that give rise to the presumption remain for the jury's consideration even though the presumption has vanished. This rule was firmly established in *Southland Life Insurance Co. v. Greenwade*, where the Texas Supreme Court stated:

We agree with the company's contention that a presumption, as such, is not evidence and that it vanished as such in view of the opposing evidence; but we do not agree that the evidentiary facts upon which it is established, could no longer be considered by the trier of the facts. Wigmore on Evidence, 2d Ed., sec. 2491. The section just cited states that if substantial contrary evidence is offered 'the presumption disappears *as a rule of law, and the case is in the jury's hands free from any rule,*' and that 'it is therefore a fallacy to attribute probative force to a presumption, increasing for the jury the weight of the facts, *even when the opponent has come forward with some evidence to the contrary.*'

.    .    .    .    .

The prima facie case of due receipt of the letter made out by plaintiff in the present case is not *conclusively rebutted* by the company's evidence tending to establish it was not received; nor is such evidence *so clear, positive and disinterested* as to overcome (other than as a rule of law) the presumption of fact in the insured's favor.

138 Tex. at 456–457, 159 S.W.2d at 857–858.

We believe that the inference established by the original pledge remains for the jury to consider because the evidence offered by appellant to establish a purchase of the stock is not so clear, positive, and disinterested that the court can construe it as conclusive. Therefore, we hold that the case must be reversed and remanded for a new trial.

In view of another trial, other assignments of error will be discussed briefly. Those portions of the transcript of the September 1972 meeting excluded by the trial court should have been admitted. The objections made went to the weight of the transcript rather than to its admissibility. Appellant testified that the tape and the transcription thereof coincided with what he heard said at the meeting. A party's silence in such a situation may constitute an admission of what was said to render the statements admissible in evidence against him. *Miller v. Dyes*, 137 Tex. 135, 151 S.W.2d 186 (1941).

The tax returns of Seguin Aviation, Inc., for the years 1972 through 1977, the tax returns of appellant for the years 1972 through 1976, and appellee's response to appellant's motion for production of documents in which appellee admitted he had no correspondence with Seguin Aviation, Inc., since September 13, 1972, should have been admitted in evidence. This evidence is relevant and material on the issue of ownership of the stock. In determining whether the stock was transferred in October 1972 as security for the debt, the jury may consider all circumstances surrounding the transaction including those that have subsequently occurred. *Smith v. Blancas*, 87 S.W.2d 781 (Tex.Civ.App.—El Paso 1935, writ ref'd). *See* 39 Tex.Jur.2d *Mortgages and Deeds of Trust* § 31 (1976).

The judgment of the trial court is reversed, and the cause is remanded for a new trial.