**SCOTTSDALE INSURANCE COMPANY, Plaintiff,**

v.

**Davansha SESSIONS, Defendant.**

No. 4:02–CV–316–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

July 22, 2003.

Order Denying Motions Aug. 22, 2003.

Willie Ben Daw, III and Kyle Douglas Giacco, Daw & Ray, Houston, TX, Randall Garland Walters, Touchstone Bernays Johnston Beall & Smith, Dallas, TX, for plaintiff.

James B. Franks, Friedman & Franks, Fort Worth, TX, for defendant.

### MEMORANDUM OPINION and ORDER

MCBRYDE, District Judge.

Before the court for decision are the motions for summary judgment of plaintiff/cross-defendant, Scottsdale Insurance Company, ("Scottsdale") and defendant/cross-plaintiff, Davansha Sessions, ("Sessions"). After having considered the motions, briefs and evidentiary material submitted by the parties in support of their respective positions, the pleadings, and applicable authorities, the court has concluded that Sessions's motion should be granted to the extent provided in this memorandum opinion and order and Scottsdale's denied.

### I.

*Nature of the Litigation and Contentions of the Parties*

This is a declaratory judgment action brought by Scottsdale for a declaration that it has no liability to Sessions under a policy of liability insurance it issued in the name of "Standard Private Investigations and Security Services" ("policy number CLS 094854") as the named insured. Scottsdale alleges that a justiciable contro-versy exists because Sessions is claiming that Scottsdale has a payment obligation to Sessions under policy number CLS 094854 by reason of a judgment Sessions obtained on July 16, 1997, against Standard Security Services and Standard Hodges, Individually and d/b/a Standard Security Services, (the "judgment debtors") in a court of the State of Texas ("state court judgment") based on allegations by Sessions in a state court damage suit that he suffered bodily injuries by reason of the improper conduct on October 24, 1993, of a security guard ("Wheeler") employed by the judgment debtors ("state court suit"). Scottsdale denies that it has such a payment obligation. Subject matter jurisdiction exists by virtue of diversity of citizenship. Texas substantive law controls.

Sessions filed a counterclaim asserting that Scottsdale breached policy number CLS 094854 by failing to pay Sessions the amount owed to him under the state court judgment. He seeks to recover from Scottsdale the amount of the state court judgment. Each party seeks recovery from the other of court costs and attorney's fees.

Scottsdale does not deny the existence or validity of the state court judgment or that the judgment is based on claims pleaded by Sessions in the state court suit that he suffered damages by reason of (1) improper conduct of Wheeler, acting in the course and scope of his employment as a security guard for the judgment debtors, and (2) negligent and careless conduct of the judgment debtors in hiring Wheeler. However, Scottsdale maintains that neither of the judgment debtors is an insured under policy number CLS 094854. Other reasons given by Scottsdale in support of its claim of non-liability are that: (a) the policy was not in effect at the time of the October 24, 1993, incident because it had been canceled before that date; (b) Ses-

sions's claim under policy number CLS 094854 is barred by limitations; (c) Sessions cannot recover under the policy because of the failure of Scottsdale's insured to give it timely notice of the state court suit and to cooperate with Scottsdale in the defense of that suit; and (d) the state court judgment is not based on an occurrence for which the policy provides liability insurance coverage. And, Scottsdale maintains that, if it does have a payment obligation in reference to the judgment, there should be a trial as to the amount of the award that should have been made under the judgment.

Sessions counters with his contentions that: Even though the name of the insured in policy number CLS 094854 is slightly different from the names of the judgment debtors, the judgment debtors are, in fact, one and the same as the insured. Any attempted cancellation of the policy by Scottsdale was ineffective because notice was not given, as required by law, to the agency of the State of Texas responsible for issuing the security business license to Scottsdale's insured. The limitations defense asserted by Scottsdale is unmeritorious because Sessions's cause of action did not accrue more than four years prior to the filing of his counterclaim, and, in any event, the counterclaim was filed less than four years after Sessions reached the age of majority (until which time limitations was tolled). Scottsdale's contention that it does not have liability under the policy due to the failures, if any, of the insured to timely give notice and to cooperate is without merit because, bearing in mind that Sessions himself, acting through an attorney, gave Scottsdale ample notice of the state court suit before the state court judgment was taken, Scottsdale was not harmed by any such failure. The incident on which the state court judgment is based is within the scope of the insurance coverage, and the judgment fixes the amount Sessions should recover from Scottsdale

without the need for any further proceedings.

The parties refer in their pleadings and summary judgment papers to a June 26, 2001, turnover order in the state court suit by which the rights of the judgment debtors in policy number CLS 094854 were transferred from the judgment debtors to Sessions. A copy of the turnover order is found at pages 21–22 of Sessions's appendix in support of his motion for summary judgment. The court is not giving any consideration to the turnover order in deciding the summary judgment issues. Rather, the court views Sessions's claim against Scottsdale to be in his capacity as a third-party beneficiary under the insurance policy, making a breach of contract claim against Scottsdale pursuant to the direct action provision in the policy. *See* App. in Supp. of Scottsdale's Mot. at 16 (saying "[a] person ... may sue [Scottsdale] to recover on ... a final judgment against an insured obtained after an actual trial ....").

## II.

### *Analysis*

A. *Applicable Summary Judgment Principles.*

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim

"since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita,* 475 U.S. at 597, 106 S.Ct. 1348. *See also Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc) (explaining the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict).

**B.** *General Burden of Proof Principles Applicable to this Declaratory Judgment Action.*

"In a diversity action a federal court must apply the substantive law of the forum state, and the question of burden of proof is a matter of substantive law." *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n, Inc.,* 783 F.2d 1234, 1240 (5th Cir. 1986). Under Texas law, the burdens of proof in a declaratory judgment action brought by an insurer seeking a declaration of non-coverage are the same as they would be if the action had been brought against the insurance company by the person claiming the existence of coverage to enforce liability based on a claim under the policy. *See Pace Corp. v. Jackson,* 155 Tex. 179, 284 S.W.2d 340, 350 (1955); *McCart v. Cain,* 416 S.W.2d 463, 465 (Tex. Civ.App.—Fort Worth 1967, writ ref'd n.r.e.).

**C.** *Sessions Has Met His Initial Burden as to Existence of Coverage.*

▪ Texas law places the burden of proving the existence of coverage under an insurance policy on the party claiming it. *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.,* 143 F.3d 192, 193 (5th Cir.1998). Assuming that the named insured in policy number CLS 094854 is one and the same as one or both of the judgment debtors in the state court judgment, Sessions, for reasons given below, has carried his burden of proof on the existence of insurance coverage for the amount owed to him under the state court judgment, subject only to affirmative defenses of Scottsdale.

The summary judgment record establishes without dispute that Scottsdale issued policy number CLS 094854 covering a policy period from June 20, 1993, to June 20, 1994, to Standard Private Investigations and Security Services. *See* App. in Supp. of Scottsdale's Mot. at 3. The Insuring Agreement in the policy states that Scottsdale "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies," and that the insurance applies to " 'bodily injury' . . . caused by an 'occurrence' that takes place in the 'coverage territory' " and "occurs during the policy period." *Id.* at 9.

There is no dispute in the record that Sessions's injuries which led to the state court judgment, and provide the basis for the award made by the judgment, took place in the coverage territory,[1] and that

---

1. The policy definition of "coverage territory" includes the entire United States of America. App. in Supp. of Scottsdale's Mot. at 17.

the incident that led to those injuries occurred during the policy period. Nor is there a dispute that the damages claimed by Sessions in the state court suit, and on which the award made by the state court judgment is based, resulted from "bodily injury," as that term is defined in the policy. *Id.* at 17.

Also undisputed are the facts that Scottsdale's insured was licensed to conduct his security business in Texas under the Texas Private Investigators and Private Security Agencies Act (the "Act"), TEX. REV. CIV. STAT. ANN. art. 4413(29bb) (1993); that the licensing authority was the Texas Board of Private Investigators and Private Security Agencies (the "licensing agency"); and, that policy number CLS 094854 was issued, and certified to the licensing agency, by Scottsdale to satisfy its insured's obligation under the statute to have a statutorily specified kind of public liability insurance.

1. *The "Occurrence" Issue.*

Scottsdale contends that coverage does not exist because the incident that caused Sessions's damages was not an "occurrence" within the meaning of the policy (apparently because of an allegation in Sessions's state court pleading that Wheeler's conduct constituted intentional infliction of emotional distress). Scottsdale's Br. in Supp of Resp. to Sessions's Mot. at 14–15. The court disagrees with Scottsdale for two reasons, as discussed below.

(a) *First, the Award of the State Court is Based on an Occurrence.*

The policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." App. in Supp. of Scottsdale's Mot. at 19. The pleading in the state court suit on which the state court judgment is predicated clearly alleges facts that constitute an accident, as that word generally is understood

in the context of insurance coverage of this kind. App. in Supp. of Sessions's Mot. at 6–11. While Sessions alleged that Wheeler intentionally engaged in certain activities, *id.* at 9, ¶ 8, the allegations as a whole make clear that Sessions's basic complaint is that he was injured by reason of the negligent and careless conduct of Wheeler and of the judgment debtors in the selection of Wheeler as an employee, *id.* at 9–10, ¶¶ 9, 10 & 12.

Scottsdale argues that its "duty to indemnify is triggered by the actual facts establishing liability in the underlying suit," and that, because Sessions pleaded in his state court petition intentional conduct as well as negligent and careless conduct, a default judgment based on both allegations is unenforceable against Scottsdale. Scottsdale's Br. in Supp. of Resp. to Sessions's Mot. at 14–15. This argument overlooks that when the state court judgment was taken by default all liability facts alleged in Sessions's pleading were deemed by law to be true and to form the basis for the judgment, with the consequence that the claims of negligence and carelessness independently supported the award made by the state court judge.

The allegations of intentional conduct did not add one iota to Sessions's entitlement to a default judgment based on his claims of negligence and carelessness. No separate damages were sought by Sessions in the state court suit for intentional conduct. The allegations of negligence and carelessness upon which the state court judgment were based were not merely allegations designed to invoke coverage— rather, those allegations were at the heart of Sessions's liability claim against Scottsdale's insured. Scottsdale had an opportunity to defend its insured as to those claims, and wrongfully declined to do so. Under those circumstances, Scottsdale is not in a position now to take issue with the factual basis of the judgment.

(b) *Second, the Governing Texas Statute Supplanted "Occurrence" with "Event".*

The section of the Act that required Scottsdale's insured to provide evidence of a policy of general liability insurance on a certificate of insurance form was very specific in its description of the kind of liability insurance coverage that such a policy must provide, saying:

> Sec. 40.(a) ... The policy of general liability insurance shall be conditioned to pay on behalf of the licensee all sums which the licensee becomes legally obligated to pay as damages because of bodily injury, property damage, or personal injury, *caused by an event* involving the principal, its servants, officers, agents, or employees in the conduct of any business licensed under this Act. The insurance policy must contain minimum limits of $100,000 per occurrence for bodily injury and property damage, and $50,000 per occurrence for personal injury, with a minimum total aggregate amount of $200,000 for all occurrences.

TEX. REV. CIV. STAT. ANN. art. 4413(29bb), § 40.(a) (1993) (emphasis added). In the certificate Scottsdale provided to the licensing agency, it stated "that it has issued to the insured named herein a policy ... to meet the requirements of the [Act]." App. in Supp. of Sessions's Mot. at 1.

█ When the language of an insurance policy that has been issued for the purpose of satisfying a statutory requirement varies from the statutory requirement, the language of the statute must be considered a part of the policy language. *See Camden Fire Ins. Ass'n v. Harold E. Clayton & Co.*, 117 Tex. 414, 6 S.W.2d 1029, 1030 (1928); *Carroll v. Universal Underwriters Ins. Co.*, 613 S.W.2d 815, 817 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). In such an event, the policy will be given a construction that causes it to conform to the statute. *See Unigard Sec. Ins. Co. v. Schaefer*, 572 S.W.2d 303, 307 (Tex. 1978) (saying "[w]hen the Legislature specifies a particular extent of insurance coverage, any attempt to void or narrow such coverage is improper and ineffective").

█ When the foregoing principles are applied to the instant case, the proper construction to be given to policy number CLS 094854 is that the word "occurrence" is supplanted by the word "event" so that, when read in context with the statutory requirement, the policy provides that the insurance applies to bodily injury "caused by an event." Obviously, the bodily injury claimed by Sessions, upon which the state court judgment is based, was caused by an "event," the very first definition of which is "something that happens." WEBSTER'S 3D NEW INT'L DICTIONARY 788 (1966).

After having given careful consideration to *Scottsdale Insurance Co. v. Texas Security Concepts and Investigation*, 173 F.3d 941 (5th Cir.1999), upon which Scottsdale relies, Scottsdale's Resp. to Sessions's Supp. Br. at 1–2, the court has concluded that the case is not pertinent to the point under discussion. In that case, a panel of the Fifth Circuit (seemingly in reliance on its interpretations of Louisiana law, Mississippi law, and federal law[2]) held that

---

**2.** The court is puzzled why the panel that decided *Scottsdale Insurance Co. v. Texas Security Concepts and Investigation* did not discuss the potentially applicable Texas legal principles announced in the cases mentioned on this and the preceding page of this memorandum opinion and order. The one Texas case cited by the panel, *Baker v. Guaranty* *National Insurance Company*, 615 S.W.2d 303 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.), does not bear on the extent to which the insuring obligations of a liability insurance policy can be affected by a statutory requirement. Rather, *Baker* only dealt with enforceability of provisions of an insurance policy

the provisions of the Act did not cause an assault and battery exclusion in an insurance company policy to be invalid. *Id.* at 943. In the instant action, the court is not dealing with an exclusion, such as the assault and battery exclusion with which the Fifth Circuit panel dealt in *Texas Security Concepts.* One might plausibly contend that such an exclusion would not violate Texas public policy because it does not directly contravene the Act's definition of the required insurance coverage.

In contrast, the use of "occurrence" in policy number CLS 094854 directly conflicts with the Act's insurance requirement. The Act could not more clearly define the required basic insurance coverage when it said that it "shall be conditioned to pay on behalf of the licensee all sums which the licensee becomes legally obligated to pay as damages because of bodily injury ... *caused by an event* ...." TEX. REV. CIV. STAT. ANN. art. 4413(29bb), § 40.(a) (1993) (emphasis added). Language in a policy of insurance certified by an insurance company to meet the requirements of the Act at direct variance with this statutory requirement would be an affront to the public policy the Texas Legislature announced by the Act.

The court concludes that *Camden Fire Insurance Association, Carroll,* and *Unigard Security Insurance Co., supra* at 485, govern the issue under discussion, and that the principles of Texas law announced in those cases compel the conclusion that the word "occurrence" became "event" when Scottsdale certified to the licensing agency that it issued policy number CLS 094854 "to meet the requirements" of the Act. *See* App. in Supp. of Sessions's Mot. at 1.

having to do with the steps an insured must take after having been sued on a claim cov-

### 2. *The Identity–of–Insured Issue.*

▆ Scottsdale fares no better in its contention that the named insured in the policy, "Standard Private Investigations and Security Services," is not one and the same as one or both of the judgment debtors. The summary judgment establishes without dispute that "Standard Private Investigations and Security Services" was but an assumed name that Standard Hodges ("Hodges"), one of the judgment debtors, used in the conduct of his licensed business, *see* App. in Supp. of Sessions's Mot. at 3; Shimek Dep. at 22, and that the insurance was provided by Scottsdale for the purpose of satisfying a requirement of a Texas statute that Hodges's licensed business have liability insurance coverage, App. in Supp. of Sessions's Mot. at 1. Also undisputed is that Hodges from time to time used "Standard Security Services" as the assumed name for his business. *See* App. in Supp. of Sessions's Resp. to Scottsdale's Mot. at 16, 17, 18, 20, 22, & 24; Ex. 1 to Shimek Dep. at 50, 55, 58, 60, 64, 66, 87, 95, 96, 101, 103, 112, 116, 147, & 155 (referring to handwritten numbers in lower right-hand corners of pages in exhibit).

▆ Inasmuch as the true identity of the insured was Hodges doing business under slight variations of an assumed name, the fact that the state court judgment is against Hodges is sufficient to cause it to be against the named insured in the Scottsdale policy. Texas law provides that a person doing business under an assumed name can be sued for liability arising out of that business either in his or her natural name or the assumed name or both. *Dillard v. Smith,* 146 Tex. 227, 205 S.W.2d 366, 367–68 (1947).

ered by the policy.

### 3. The "Actual Trial" Issue.

■ Finally Scottsdale argues that Sessions has not met his summary judgment burden as to the existence of insurance coverage for the amount owed to him under the state court judgment because, Scottsdale says, there is a fact issue as to the damages Sessions is entitled to recover from Scottsdale's insured. Scottsdale's Br. in Supp. of Resp. to Sessions's Mot. at 15–16. In other words, Scottsdale maintains that the state court judgment does not fix the amount of damages to which Sessions is entitled. In its supplemental brief, Scottsdale recasts this argument, contending that the reason it is not bound by the amount determined by the state court judgment is that the judgment was not rendered after "actual trial." Scottsdale's Reply & Supplemental Br. in Supp. of its Mot. at 5–7.[3]

The policy language that serves as a predicate for Scottsdale's argument is the language that gives Sessions, as a judgment creditor of Scottsdale's insured, the right to bring a direct action against Scottsdale based on the state court judgment. The policy provides that "[a] person . . . may sue [Scottsdale] to recover on . . . a final judgment against an insured obtained after an actual trial . . . ." App. in Supp. of Scottsdale's Mot. at 16.

For the three reasons discussed below, the court has concluded that Scottsdale's argument is unmeritorious.

### (a) First, Scottsdale's Contention Contravenes the Policy Language.

The policy language itself defeats Scottsdale's contention that it is not bound by the amount of the state court judgment. As noted above, the policy specifically provides that Sessions may sue Scottsdale to recover on "a final judgment against an insured." There is no suggestion in the policy language that the claimant bringing such a suit is obligated to re-litigate the amount of the judgment in order to recover on the judgment.

In support of its argument, Scottsdale relies on *State Farm Fire and Casualty Co. v. Gandy*, 925 S.W.2d 696 (Tex.1996). *Gandy* is not in point. The claim against the insurance company in *Gandy* was based on a $6,000,000.00 judgment the claimant and State Farm's insured had agreed upon, without any notice to State Farm, after State Farm had undertaken to provide a defense to its insured in the liability suit by the claimant against the insured. After the agreed judgment was entered, the insured assigned to the claimant whatever claims the insured might have against State Farm for any failure of State Farm to perform its policy obligations to the insured. The trial court granted summary judgment for State Farm on the claimant's policy claim, holding that the conduct on which the claim was based was outside the scope of the insurance coverage, but nevertheless entered a judgment against State Farm on the ground that, once it conducted the defense of the insured, it had an obligation to do so properly, and became liable because of its failure to properly defend. Thus, the recovery by the claimant was not under the policy, but was based on an extracontractual claim possessed by the claimant through the assignment from State Farm's insured. The Supreme Court summed up its holding as follows:

> We hold that [insured's] assignment to [claimant] violated public policy and therefore conveyed her nothing. Because she had no right to recover against State Farm except as [insured's]

---

**3.** The court is considering Scottsdale's reply and supplemental brief in support of its motion even though the document is not paginated. *See* Local Civil Rule LR 10.1(d). Thus, reference to page numbers in the document are to unnumbered pages.

assignee, we reverse the judgment of the court of appeals and render judgment that [claimant] take nothing.

*Id.* at 698.

The part of the *Gandy* opinion upon which Scottsdale relies is the discussion in section IV(B). *See id.* at 713–15. As Justice Enoch noted in his concurring opinion, the discussion in section IV(B) is *dicta,* and announces questionable principles. *Id.* at 720.

In the instant action, there is no hint of collusion between Sessions and Scottsdale's insured. There was no agreed judgment or any other kind of agreement between Sessions and the insured. Rather, the damages in the state court judgment were fixed by the state court judge as part of the default judgment proceeding. *See* App. in Supp. of Sessions's Mot. at 13–14. Scottsdale was afforded an opportunity to defend its insured in the state court suit, *see* App. in Supp. of Scottsdale's Resp. to Sessions's Mot. at 29–30, and the default judgment was not taken until after Scottsdale had refused to provide such a defense, *id.* at 36. It is not in a position now to contend that it can contest the award made by the state court judgment. Rather, it is bound by its policy commitment that Sessions may sue Scottsdale "to recover on a final judgment against an insured."

(b) *Second, Having Declined to Defend, Scottsdale Cannot Be Heard to Contend That There Was Not an "Actual Trial".*

Scottsdale had a duty under the policy to provide a defense to its insured in the state court suit. *See* App. in Supp. of Scottsdale's Mot. at 12. Courts of Texas consistently have held that an insurance company cannot insist on compliance with the "actual trial" requirement once it has breached its duty to defend. *See, e.g.,*

*Gulf Ins. Co. v. Parker Prods., Inc.,* 498 S.W.2d 676, 679 (Tex.1973); *First Nat'l Indem. Co. v. Mercado,* 511 S.W.2d 354, 358 (Tex.Civ.App.—Austin 1974, no writ); *Pioneer Cas. Co. v. Jefferson,* 456 S.W.2d 410, 413 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.); *Gulf Ins. Co. v. Vela,* 361 S.W.2d 904, 908 (Tex.Civ. App.—Austin 1962, writ ref'd n.r.e.).

(c) *Third, the State Court Judgment was Rendered After an "Actual Trial".*

Of interest is the decision of an Indiana appellate court in *Smithers v. Mettert,* which relied on *Pioneer Casualty* and *Gulf Insurance (Vela)* for the proposition that "an insurer's refusal to defend an insured against suit bars the subsequent invocation of a 'no-action' clause as a defense." [4] 513 N.E.2d 660, 664 (1987). Apropos here, the court explained that the "[insurer] will not be allowed to argue that the default judgment did not constitute a 'judgment after actual trial', especially when [insurer] had notice of the suit and could have taken measures to contest the suit." *Id.* The Indiana court, again relying on *Pioneer Casualty* and *Gulf Insurance (Vela),* said that, under circumstances similar to those presented in the instant case, a default judgment is, in fact, rendered after an "actual trial":

A trial does not have to be contested or adversary to be an "actual trial". *Pioneer Casualty,* at 413; *Gulf Insurance,* at 908. In both *Pioneer Casualty* and *Gulf Insurance,* the courts held that a default judgment was an "actual trial" within the meaning of the no-action clause. *Pioneer Casualty,* at 413; *Gulf Insurance,* at 908. In both cases, the insurers knew of the accident and lawsuit; the insureds failed to attend trial;

---

**4.** The policy clause containing the "actual trial" language often is called the "no-action" cause and sometimes the "direct-action" clause.

and default judgments were entered after evidence of damages was presented to the courts.

*Id.* at 664–65. The court concludes that the Indiana court correctly interpreted principles of Texas law announced in *Pioneer Casualty* and *Gulf Insurance (Vela)* when it gave the explanations set forth above. Under Texas law, a default judgment, unless it is shown to have been entered pursuant to collusion, is a judgment entered after "actual trial" within the meaning of the no-action clause.

\* \* \* \* \* \*

For the reasons given above, the court concludes that there is no genuine issue for trial as to whether Sessions met his initial burden of proof on the existence of insurance coverage for the amount owed to him under the state court judgment. No rational trier of fact, considering the record as a whole, could find in favor of Scottsdale as to any fact that would lead to a different conclusion. The court now turns to a consideration of Scottsdale's affirmative defenses.

## D. *Scottsdale Has Failed to Meet Its Burden as to Any Affirmative Defense.*

Scottsdale's affirmative defenses are that (a) the policy had been canceled before the incident that gave rise to the state court suit and judgment, (b) Sessions's claims are barred by limitations, and (c) Sessions cannot recover under the policy because of the failure of Scottsdale's insured to give it timely notice of the state court suit and to cooperate with Scottsdale in the defense of the suit. Scottsdale has the burden of proof as to each of these defensive theories.

### 1. *The Cancellation Defense.*

Section 40 of the Act, as it existed when policy number CLS 094854 was issued, required that Scottsdale's insured

have a policy of liability insurance and that he file evidence of the policy with the licensing agency. *See* Tex. Rev. Civ. Stat. Ann. art. 4413(29bb), § 40(a) (1993). Policy number CLS 094854 was issued pursuant to that statutory requirement. *See* App. in Supp. of Sessions's Mot. at 1. As required by the Act, evidence of the policy was provided in June 1993 by Scottsdale, acting through Elton George & Company, to the licensing agency by way of a document titled "Proof of Public Liability Insurance," which contains a "Certificate of Insurance" certifying that policy number CLS 094854, effective June 20, 1993, to June 20, 1994, was issued with "Standard Private Investigations and Security Services" as the insured. *Id.*

As is noted in the Certificate of Insurance, *id.*, the Act mandated that "[i]nsurance certificates executed and filed with the [licensing agency] pursuant to [the] Act shall remain in force and effect until the insurer has terminated future liability by a 10–day notice to the [licensing agency]." Tex. Rev. Civ. Stat. Ann. art. 4413(29bb), § 42(d) (1993). "It is settled that when the Legislature requires the giving of notice, but does not expressly direct the manner of giving notice, the person to be informed must receive actual notice before it will be effective." *Johnson Serv. Co. v. Climate Control Contractors, Inc.*, 478 S.W.2d 643, 645 (Tex.Civ.App.— Austin 1972, no writ). Thus, at least from the standpoint of the public, including Sessions, policy number CLS 094854 would not be terminated by cancellation until ten days after the licensing agency had received notice of the cancellation.

Scottsdale maintains that it accomplished cancellation of the policy effective September 19, 1993, by a notice of cancellation it says it mailed on September 9, 1993. *See* App. in Supp. of Scottsdale's Resp. to Sessions's Mot. at 27. There is

no direct evidence in the summary judgment record that such a notice was received by the licensing agency. Rather, Scottsdale seeks, through use of circumstantial evidence, to create a presumption of delivery of the notice by mail. The circumstantial evidence presented by Scottsdale consists of the following:

(a) Scottsdale provides an affidavit of Jan Picucci ("Picucci"), who said that she was once employed by Elton George & Company, and that George Acceptance Premium Finance Company, Inc., was a related entity to her former employer. App. in Supp. of Scottsdale's Mot. at 38–39. The court surmises, though there is nothing in the record so stating, that George Acceptance Premium Finance Company, Inc., provided the premium financing for policy number CLS 094854. Of potential pertinence here, Picucci said:

As a standard practice for Elton George & Company and George Acceptance Premium Finance, Inc., when an insured failed to make its premium payment, a notice of cancellation was mailed to the insured at the address listed on the notice. Also, as a standard practice in 1993 and 1994, when a Notice of Cancellation was mailed to an insured for which a certificate of proof of insurance had been sent to the Texas Board of Private Investigators and Private Securities Agencies, carbon copies of the notice were mailed at the same time to the Texas Board of Private Investigators and Private Securities Agencies, the Insurance Company and the Agent. It was standard practice to reflect on the notice the parties to which it was mailed. Further, it was standard practice to reflect on the notice the date its [sic] was mailed to all parties. The Texas Board routinely accepted these notices without objection. Elton George & Company and/or its successors retain records for seven (7) years before they are purged pursuant to company policy. There is no longer a complete file on this matter.

*Id.* No documentation accompanied the affidavit.

(b) The other item of circumstantial evidence is the affidavit of Paul W. Dwight ("Dwight"), who recites that he is "custodian of records for Scottsdale Insurance Company and as such [has] custody and control and [is] in charge of the records of Standard Private Investigators and Security Services." *Id.* at 27. The attachments to Dwight's affidavit consist of the following items:

(i) One of the items appears to be a copy of a notice of cancellation form with the name "George Acceptance Premium Finance, Inc.," at the top of the form. *Id.* at 28. The number "CLS 094854" appears on the form. *Id.* The form shows a "Cancel Date" of September 19, 1993, and a "Mail Date" of September 9, 1993. *Id.* It says that "Your policy" will be canceled as of the effective date shown unless premium payment has been received prior to that date. *Id.* On the form are the name and address of "Standard Private Investigati." *Id.* at 28. Under the heading "Lienholders Notified:," the words "Texas Board of Private Invest" appear, but no address is shown. *Id.*

(ii) Another item is a copy of a document titled "Producer's Confirmation of Cancellation" that appears to pertain to policy number CLS 094854, showing a cancellation date of September 19, 1993, and a mail date of October 19, 1993. *Id.* This document, which appears to be directed to an insurance agency in Denton, Texas, indicates that the policy was canceled for nonpayment of premium. *Id.* Nothing on the document suggests

that it was sent to anyone other than the insurance agency.

(iii) Next, there is a copy of a "Proof of Public Liability Insurance" form directed to the licensing agency, *id.* at 29, providing proof of insurance through Scottsdale for Standard Private Investigations and Security Services for a policy period of October 27, 1993, through October 27, 1994, and showing that the policy bears number CLS 134125, *id.*

(iv) There is a copy of a letter dated March 3, 1997, from the attorney for Sessions to Scottsdale, informing Scottsdale of the state court suit, advising Scottsdale that its insured was in default, and informing Scottsdale that if it did not come in and defend the lawsuit a default judgment would be taken. *Id.* at 30–31. Accompanying the copy of the letter is a copy of Sessions's pleading in the state court suit. *Id.* at 32–36.

(v) Finally, there is a copy of a March 12, 1997, letter from Scottsdale to Sessions's attorney acknowledging receipt of the attorney's March 3, 1997, letter and the accompanying pleading, and advising that Scottsdale will be unable to respond to Sessions's claim or his pleading because the insurance policy was canceled effective September 19, 1993. *Id.* at 37.

Scottsdale argues that the evidence mentioned above invokes in its favor the rule in Texas that "when a letter properly addressed and with postage prepaid is mailed, a presumption of fact (rebuttable of course) arises that it was duly received by the addressee." *Southland Life Ins. Co. v. Greenwade,* 138 Tex. 450, 159 S.W.2d 854, 857 (1942). However, Scottsdale has failed to provide the proof required for creation of such a presumption of fact as to receipt by the licensing agency of a copy of the document. Scottsdale has provided no evidence of any address to which any notice directed to the agency might have been mailed, nor has it provided any evidence that postage was prepaid on any such mailing.[5] Therefore, the summary judgment record does not provide any factual basis under Texas law for a presumption of fact that the licensing agency received any notice of cancellation of policy number CLS 094854. Thus, there is no evidence that the Act's notice requirement was satisfied.

The court has other reservations about the adequacy of Scottsdale's evidence to raise a presumption of delivery by mail to the licensing agency, such as the sufficiency of the affidavits upon which Scottsdale relies, but the court need not dwell on those other reasons because the specific inadequacies already mentioned are sufficient to demonstrate that the summary judgment record does not provide a basis for any presumption or inference that the agency received notice of termination of policy number CLS 094854.[6]

---

**5.** The court recognizes that the facts essential to creation of the presumption of fact as to receipt by the addressee of a mailed item can be shown by customary mailing practices. *See Cooper v. Hall,* 489 S.W.2d 409, 415 (Tex. Civ.App.—Amarillo 1972, writ ref'd n.r.e.). However, the fact that the proof is made in whole or in part by customary mailing routine does not change the basic rule that, for the presumption to be created, there must be evidence, through some means, that the allegedly mailed item was properly addressed, posted, and put in the mail to the addressee.

In other words, the ability to make all or some of the proof through a customary mailing routine does not change the nature of the facts that must be proved.

**6.** If Scottsdale had raised a presumption of receipt by the licensing agency of the notice of cancellation, the presumption would vanish in the face of opposing evidence. *Southland Life Ins. Co. v. Greenwade,* 138 Tex. 450, 159 S.W.2d 854, 857–58 (1942). Depending on the strength of the opposing evidence, the evidentiary basis of the presumption could

## 2. The Limitations Defense.

Scottsdale acknowledges that the applicable statute of limitations under Texas law is the four-year statute. *See* Scottsdale's Br. in Support of its Mot. at 10. However, Scottsdale is incorrect in believing that the court should look to when limitations would have run against Scottsdale's insured for the making of a claim under the policy rather than to when it commenced to run against Sessions. Much of the argument made by Scottsdale on the limitations issue is predicated on a belief by Scottsdale that Sessions is asserting his claim through the turnover order that is mentioned in an earlier part of this memorandum opinion and order. *See supra* at 482. However, the claim of Sessions that the court is dealing with in this memorandum opinion and order is not a claim through the turnover order but is Sessions's direct breach of contract claim against Scottsdale, which is being asserted under the express terms of the policy contract that gives Sessions the right to sue Scottsdale to recover on a final judgment obtained against Scottsdale's insured. *See* App. in Supp. of Scottsdale's Mot. at 16.

Sessions was born September 29, 1982. *See* App. in Supp. of Sessions's Mot. at 27. He did not become eighteen years of age until September 29, 2000. Under Texas law, he was deemed to be under a legal disability until he became eighteen years of age. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.001(a)(1) (Vernon 2002). According to a Texas statute, "[i]f a person entitled to bring a personal action is under legal disability when the cause of action accrues, the time of the disability is not included in a limitations period." *Id.* § 16.001(b). Thus, the four-year period of limitations could not start to run against Sessions until September 29, 2000. Sessions timely filed his counterclaim on July 23, 2002.

## 3. The Failure–to–Cooperate Defense.

█ In support of Scottsdale's affirmative defense that it was relieved of any obligation under policy number CLS 094854 because its insured failed to give it timely notice of the state court suit and to cooperate with Scottsdale in the defense of that suit, Scottsdale tenders the affidavit of Bonnie DeHeer Leigh ("Leigh"). App. in Supp. of Scottsdale's Mot. at 40. She acknowledges receipt by Scottsdale of the March 3, 1997, letter from Sessions's attorney to Scottsdale putting Scottsdale on notice of the suit, making Scottsdale aware that the defendants were in default, and telling Scottsdale that it was being given an opportunity to defend the suit, failing in which a default judgment would be taken. *See supra* at 490. Leigh says that at no time prior to the letter did Scottsdale receive any notice of the state court suit. There is no evidence of any other form of lack of cooperation by the insured.

Missing from Scottsdale's summary judgment evidence is any evidence whatsoever that Scottsdale suffered any prejudice from any failure of its insured to notify it of the state court suit. Indeed, Scottsdale can hardly show prejudice when it received notice of the state court suit and the suit's status more than four months before the default judgment was taken, and, although invited to defend the lawsuit, it made the conscious decision to do nothing.[7]

well remain in the case for consideration by the jury. In this case, there is considerable evidence in the form of the deposition testimony of an official of the licensing agency, Larry R. Shimek, and the records of the agency that would serve to rebut any presumption of receipt by the agency of the cancellation notice. However, because of the court's con-

clusion that the presumption was not created by Scottsdale evidence, the court is not required to evaluate the effect of opposing evidence.

7. Interestingly, Scottsdale's March 12, 1997, letter declining to become involved in the defense of the state court suit makes no men-

In *Hanson Production Co. v. Americas Insurance Co.*, the Fifth Circuit made the prediction that the Texas Supreme Court will follow the modern trend by requiring an insurance company to prove prejudice in order to avoid coverage based on its insured's failure to comply with a notice or cooperation requirement of an insurance policy. 108 F.3d 627, 630–31 (5th Cir. 1997). This court agrees. Therefore, Scottsdale's defense based on its insured's failure to give notice and cooperate is without merit.

\* \* \* \* \* \*

For the reasons given above, the court concludes that there is no genuine issue for trial as to any of the affirmative defenses asserted by Scottsdale. No rational trier of fact, considering the record as a whole, could find in favor of Scottsdale as to any fact that would validate any such defense.

### E. *The Court's Rulings.*

The court is denying Scottsdale's motion for summary judgment and is granting Sessions's to the extent of awarding him recovery from Scottsdale for the face amount of the state court judgment, plus simple interest thereon at the rate of 10% per annum as provided therein, plus costs of court incurred in this action. The summary judgment record establishes that the state court judgment remains unpaid in its entirety, both as to the principal amount thereof as well as interest thereon. App. in Supp. of Sessions's Mot. at 27. The total amount to which Sessions is entitled under the judgment as of the date of the signing of this memorandum opinion and order is $213,843.28 ($125,668.72 principal plus simple interest at 10% per annum

from July 16, 1997, to July 22, 2003, in the amount of $88,174.56).

Also, the court is ruling that Sessions is entitled to recover from Scottsdale his attorney's fees and non-taxable legal expenses. *See Dairyland County Mut. Ins. Co. of Tex. v. Childress,* 650 S.W.2d 770, 775 (Tex.1983).[8]

Therefore,

### III.

### *ORDER*

The court ORDERS that:

1. Scottsdale's motion for summary judgment be, and is hereby, denied;

2. Sessions's motion for summary judgment be, and is hereby, granted to the extent that the court ORDERS that Sessions have and recover from Scottsdale $213,843.28 as the amount to which he is entitled under the state court judgment through the date of the signing of this memorandum opinion and order, plus $34.41 per day from this date until the final judgment is signed, plus costs of court and reasonable attorney's fees and expenses; and

3. The parties are to comply with the following procedures for determining the amount of the award to be made as reasonable attorney's fees and expenses:

 (a) By August 1, 2003, Sessions shall file a document in which he provides full information relative to the amount of attorney's fees and legal expenses he seeks to recover in this case, the contents of which will be verified by the affidavit or affidavits of a person or persons having personal knowledge of the facts stated in the

---

tion of any justification for its decision other than its claim that the insurance policy had been canceled. App. in Supp. of Scottsdale's Mot. at 37.

**8.** The Texas statutory provision that provides for an award of attorney's fees for breach of contract is now found at § 38.001 of the Texas Civil Practices & Remedies Code.

document, which document will have the required itemization and argument and authorities in support of the requested award.

(b) By August 8, 2003, lead counsel for Sessions, lead counsel for Scottsdale, and a corporate representative of Scottsdale with full settlement authority, shall meet in the office of counsel for Sessions in an attempt to agree upon an amount to be awarded to Sessions in this case as reasonable attorney's fees and litigation expenses (exclusive of taxable court costs). If the parties are unable to agree on a time and date for such meeting, the meeting shall be held at 10:00 a.m. on August 8, 2003. Scottsdale is not expected to agree that Sessions is entitled to recover reasonable attorney's fees and expenses. However, Sessions and Scottsdale are expected to engage in a good-faith attempt to reach agreement as to the amount to be awarded, bearing in mind that the court has already determined that Sessions is entitled to make such a recovery from Scottsdale. The parties shall file with the court by 2:00 p.m. on the day after the date when such meeting is held a joint report, signed by lead counsel for each party, in which the parties will identify the persons present at the meeting, give the time and date of the meeting, and inform the court of any agreement reached at the meeting.

(c) If agreement is not reached pursuant to the procedure contemplated by the immediately preceding subparagraph, Scottsdale shall file by five (5) days after the filing of such joint report its response to the document filed by Sessions in support of the amount he seeks as attorney's fees and litigation expenses.

### MEMORANDUM OPINION and ORDER ON MOTIONS

Before the court for decision are the motions, combined in a single document, of plaintiff/cross-defendant, Scottsdale Insurance Company, ("Scottsdale") filed August 1, 2003, for new trial or to alter or amend judgment. After having considered such motions, the reply thereto of defendant/cross-plaintiff, Davansha Sessions, ("Sessions"), and Scottsdale's supplemental brief in support of its motions, and after having again reviewed the summary judgment papers upon which the conclusions and rulings expressed in the court's July 22, 2003, memorandum opinion and order were based, the court has concluded that Scottsdale's motions should be denied.

### I.

### Grounds of Scottsdale's Motions, as Supplemented

The motions recite in their introduction that they are under Federal Rule of Civil Procedure 59. They seek relief from the summary judgment rulings the court made in favor of Sessions in a memorandum opinion and order the court signed in this action on July 22, 2003.

Two aspects of the court's July 22 rulings are the focus of the motions. In addition, the motions present grounds not heretofore urged by Scottsdale why Scottsdale's motion for summary judgment should have been granted and Sessions's denied.

First, the motions urge the court to change its ruling that the summary judgment evidence did not create a presumption of delivery by the United States mail to the licensing agency of notice of cancellation of policy number CLS 094854. In support of that request, Scottsdale asks the court to consider new evidentiary ma-

terial submitted by Scottsdale with its motions.

Next, Scottsdale re-urges that the state court judgment does not fix the amount of damages recoverable by Sessions against Scottsdale, and that the fact-finder should determine the amount of damages. Entirely new are Scottsdale's grounds that Sessions should not be entitled to recover the amount of the state court judgment because, Scottsdale argues for the first time, (1) Kristy Williams, individually, owns part of the judgment because damages she suffered, individually, are included in the award made by the judgment, and (2) Sessions's recovery should be reduced by a settlement payment he received from other parties. Not only are these arguments new, one of them is inconsistent with presentations made by Scottsdale to the court in summary judgment documents Scottsdale had filed before the court ruled on the summary judgment motions on July 22. Some of the new evidentiary items submitted by Scottsdale bear on these new grounds.

The newly submitted evidentiary items are:

(1) An affidavit of Kyle D. Giacco, counsel for Scottsdale, signed July 31, 2003, stating that items "attached herein as part of the appendix" are true and correct copies of the originals, App. in Supp. of 8/1/03 Mots. at 1 ("Item No. 1");

(2) A copy of an affidavit of Jan Picucci ("Picucci") signed July 29, 2003, *id.* at 2–3 ("Item No. 2");

(3) A copy of an unsigned item dated March 17, 2003, bearing the letterhead of counsel for Sessions addressed to counsel for Scottsdale, which purports to contain answers made by Sessions to interrogatories submitted to him by Scottsdale in this action, *id.* at 4–9 ("Item No. 3");

(4) A copy of an item dated March 17, 2003, bearing the letterhead of counsel for Sessions addressed to counsel for Scottsdale, which appears to contain responses made by Sessions to a request production directed to him by Scottsdale in this action, *id.* at 10–12 ("Item No. 4");

(5) Copies of papers that apparently are Exhibits "A," "B," "C," and "D," respectively, to Item No. 4, *id.* at 13–36 ("Item No. 5"); and

(6) What appear to be copies of papers pertaining to a settlement, or possible settlement, between Scottsdale and Kristy Williams, who originally was a defendant/cross-plaintiff in this action, App. filed 8/7/03 in Supp. of Scottsdale's Suppl. Br. at 1–9 ("Item No. 6").

## II.

### *Standards for Considering Request for Relief Under Rule 59*

 As the Fifth Circuit explained in *Simon v. United States*:

"Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory."

891 F.2d 1154, 1159 (5th Cir.1990) (quoting *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986) (citations omitted)). The Fifth and Seventh Circuits are not alone in upholding a district court's declination to consider a new argument made on a Rule 59 motion. *See Seamon v. Vaughan*, 921 F.2d 1217, 1220 (11th Cir. 1991); *Am. Home Assurance Co. v. Glenn*

*Estess & Assocs., Inc.,* 763 F.2d 1237, 1239 (11th Cir.1985).

The court has considerable discretion in determining whether to grant a Rule 59 motion. *See Weber v. Roadway Express, Inc.,* 199 F.3d 270, 272, 276 (5th Cir.2000). If such a motion seeks to amend a summary judgment record after the court has ruled on the motions for summary judgment, the court can deny it on the ground that the motion is a "transparent effort to avoid the adverse ruling." *Id.* at 276. In the course of holding that the district court was not required to reconsider a summary judgment simply because the opponent belatedly came forward with evidence not submitted prior to the ruling, in *Calpetco 1981 v. Marshall Exploration, Inc.,* the Fifth Circuit said that "[o]therwise, the cycle of reconsideration would be never-ending," 989 F.2d 1408, 1415 (5th Cir. 1993), and that, "a district judge must have considerable discretion in determining when enough is enough," *id.*

In *Lavespere v. Niagara Machine & Tool Works, Inc.,* the Fifth Circuit explained:

> In any case in which a party seeks to upset a summary judgment on the basis of evidence she failed to introduce on time, two important judicial imperatives clash: the need to bring litigation to an end and the need to render just decisions on the basis of all the facts. The task of the district court in such a case is to strike the proper balance between these competing interests. In order to do this, the court should consider, among other things, the reasons for the moving party's default, the importance of the omitted evidence to the moving party's case, whether the evidence was available to the non-movant before she responded to the summary judgment motion, and the likelihood that the non-moving party will suffer unfair prejudice if the case is reopened.

910 F.2d 167, 174 (5th Cir.1990) (footnote omitted). While there is no imperative that the moving party establish that its failure to timely offer evidence was due to excusable neglect, the failure of a party to provide substantial explanation for its tardiness is sufficient reason for denial of a motion to reopen the evidentiary record. *Id.* at 175. *See also, Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.,* 174 F.3d 653, 658 n. 1 (5th Cir.1999) (noting that the failure of a summary judgment opponent to explain why evidence offered in support of a Rule 59 motion was not available prior to the district court's grant of summary judgment is a valid basis for denying the Rule 59 motion).

## III.

### Analysis

#### A. *The Presumption–of–Delivery Issues.*

The court decision upon which Scottsdale places principal reliance in its argument that the court erred in its ruling that the summary judgment evidence was not sufficient to create a presumption by delivery of notice of cancellation by the United States mail to the licensing agency is the 1995 decision of the Eighth Circuit in *Shur–Value Stamps, Inc. v. Phillips Petroleum Co.,* 50 F.3d 592 (8th Cir.1995). Apparently Scottsdale reads *Shur–Value* as saying that under Texas law a presumption of delivery can be created by evidence of a customary mailing routine even though there is no evidence that would support, circumstantially or otherwise, findings that the item was properly addressed and posted. The court is reluctant to try to decipher the Eight Circuit's interpretation of Texas law, but the court is satisfied that the Eighth Circuit misunderstood Texas law if it held as Scottsdale contends it did. *See* Mem. Op. & Order of 7/22/03 at 26, 27 n. 5.

■ In *Texas Employers Insurance Ass'n v. Wermske*, the Texas Supreme Court, in the course of reaffirming its holding in *Southland Life Insurance Co. v. Greenwade*, 138 Tex. 450, 159 S.W.2d 854, 857 (Tex.1942), as to the proof that must be made for a presumption of delivery by mail to exist, added the following:

> When there is *positive* testimony that a letter has been enclosed in an envelope *which is correctly stamped and addressed and is deposited in the mail,* there is a rebuttable presumption that it was duly received.

162 Tex. 540, 349 S.W.2d 90, 92 (Tex.1961) (emphasis added). Apropos here, in *Wermske* the Supreme Court emphasized the degree of positiveness the evidence must have when the sender relies on office custom, saying:

> Where the sender relies on office custom to support the inference of mailing, the majority rule is that there must be corroborating circumstances to support the inference that the custom has been carried out.

*Id.* In accord is the 1999 decision of the Texas Supreme Court in *Wembley Investment Co. v. Herrera,* 11 S.W.3d 924, 928 (Tex.1999).

■ To whatever extent the holding in *Shur–Value* varies from the rulings of the Texas Supreme Court in *Greenwade, Wermske,* and *Herrera, Shur–Value* misportrays Texas law. Similarly, Scottsdale is asking the court to disregard the strict proof requirements of the Texas Supreme Court when it urges the court to rule that the "correctly stamped and addressed" elements are satisfied by an affidavit saying that the licensing board "routinely accepted these notices without objection" and the fact that the address of the licensing agency appears in one or more items in Scotts-

dale's file. Scottsdale's Br. in Supp. of 8/1/03 Mots. at 5–6. Therefore, the court rejects those arguments.[1]

■ Scottsdale requests the court to add Item No. 2 (the July 29, 2003, affidavit of Picucci) to the summary judgment record. *Id.* at 6. The first affidavit of Picucci, signed by her on December 4, 2002, previously submitted by Scottsdale as summary judgment evidence, appears to have had as its goal the providing of proof of the standard mailing practices of the insurance agency that would have been responsible for mailing a notice of cancellation. Among the reasons why the contents of that affidavit were not sufficient to create a presumption of delivery by mail was the absence in the affidavit of any suggestion, direct or circumstantial, that the notice in question was properly addressed or properly posted. *See* Mem. Op. & Order of 7/22/03 at 23–24. In an attempt to cure those deficiencies, Scottsdale has put the following language to Picucci's newly tendered affidavit:

> At the time, Elton George & Company and George Acceptance Premium Finance, Inc. were aware of the address of the Texas Board of Private Investigators and Private Securities Agencies and the standard practice would have been to send the notice of cancellation to that address. This address would have been the same address as that listed on the certificates of insurance issued on behalf of Scottsdale to the Texas Board of Private Investigators and Private Securities Agencies and the same address to which those certificates were sent. Further it was the standard practice to send the notices by U.S. mail and to affix prepaid postage.

1. Another reason why the new arguments mentioned at this point in the text can, and should, be rejected is that they are raised for the first time in Scottsdale's Rule 59 motions.

App. in Supp. of 8/1/03 Mots. at 2. Scottsdale has offered no substantial explanation for its tardiness in submitting an affidavit of Picucci on the subjects that are added to the newly tendered one. There can be no meaningful explanation.

Scottsdale has known since Sessions filed his motion for summary judgment on November 15, 2002, that receipt, *vel non,* by the licensing agency of the notice of cancellation was going to be a central issue at the summary judgment stage. Sessions's Br. in Supp. of Mot. for Summ. J. at 7–10. Cancellation of the policy was asserted by Scottsdale as a defense in its December 17, 2002, response to Sessions's motion for summary judgment. Scottsdale's Br. in Supp. of Resp. to Sessions's Mot. at 8–10. Scottsdale recognized at that time that for it to succeed under Texas law it would have to prove, at least, that the notice was properly addressed, stamped, and mailed to the licensing agency. *Id.* at 9. The December 4, 2002, Picucci affidavit was submitted by Scottsdale in support of the arguments it made in its responsive brief. App. in Supp. of Scottsdale's Resp. to Sessions's Mot. for Summ. J. at 24–25.

When Scottsdale filed its own motion for summary judgment on January 21, 2003, it re-urged cancellation of the policy as a reason why Sessions should be denied any recovery. Scottsdale's Br. in Supp. of its Mot. for Summ. J. at 8–10. Scottsdale again relied on the December 4, 2002, Picucci affidavit in support of its contention that the summary judgment evidence created a presumption of receipt of the cancellation notice by the licensing agency. App. in Supp. of Scottsdale's Mot. for Summ. J. at 38–39. In his February 28, 2003, response to Scottsdale's motion, Sessions told Scottsdale of an inadequacy in

its proof, noting that "[p]roof of notice by mail is incomplete and ineffective without evidence of the address to which the mail was sent." Session's Resp. to Scottsdale's Mot. for Summ. J. at 3. In Sessions's supporting brief, he elaborated by pointing out that for there to be a presumption of delivery by mail there must be proof that the item was correctly addressed and had proper postage affixed. Sessions's Br. in Resp. to Scottsdale's Mot. for Summ. J. at 10–11. Sessions specifically noted that the Picucci affidavit relied on by Scottsdale as proof of receipt by mail was insufficient because it did not supply the "missing details." *Id.* at 11.

The issue of receipt by mail again was extensively discussed by Scottsdale in the summary judgment brief it filed on March 21, 2003. Scottsdale's Reply Br. & Supplemental Br. in Supp. of its Mot. for Summ. J. at 7–10.[2] The court allowed Scottsdale to file a supplemental appendix for consideration on the summary judgment motions, which it did on March 21. Scottsdale did not include anything in the supplemental appendix to meet the deficiencies in the Picucci affidavit to which Sessions had called its attention by his response. In Sessions's March 26 reply to Scottsdale's March 21 filings, Sessions explained:

> Scottsdale correctly states in its last brief that "a letter properly addressed, stamped and mailed to the addressee is presumed to have been received by the addressee in due course." However, Scottsdale's argument subsequent to that proposition ignores a glaring hole in its proof: There is no evidence that the purported notice was properly addressed. As noted in Mr. Sessions previous brief, the purported notice con-

---

**2.** Scottsdale's reply brief and supplemental briefing was not paginated. The page references used are determined by page count,

starting with the page behind the tables of contents and authorities.

tains no address at all and does not even accurately name the putative addressee. Assuming that Scottsdale has shown its best evidence on this issue, it has no evidence to establish the predicate necessary for the presumption of delivery upon which it wishes to rely.

Sessions's Reply & Br. in Resp. filed 3/26/03 at 6 (footnote omitted).[3]

Although repeatedly having been alerted to the insufficiencies of the Picucci summary judgment affidavit, Scottsdale made no request to supplement the summary judgment record with another affidavit until after the court ruled on the motions for summary judgment on July 22, 2003. The nearest Scottsdale comes to an explanation are its comments in paragraph 12 of its August 1 motions.

> Scottsdale's evidence in response to Sessions' Motion for Summary Judgment was not challenged by Sessions before the submission of that motion to the Court or before the Court denied Sessions' Motion for summary judgment. The Court's complete denial of Sessions' Motion for Summary judgment implicitly established that Scottsdale had raised fact issues as liability and damages. Scottsdale should be allowed to amend its proof in order to address the specific factual deficiencies raised by the Court's Order granting Sessions' Motion for Summary Judgment.

Scottsdale's Br. in Supp. of 8/1/03 Mots. at 7.

If Scottsdale means that its belated filing of the second Picucci affidavit is excused by the fact that it had not been sufficiently alerted before the court's July 22, 2003, rulings on the motions for summary judgment that Picucci's December 4, 2002, affidavit would not do the job for Scottsdale, its excuse lacks merit. As the chronology set forth above demonstrates, such an excuse ignores the reality disclosed by the summary judgment record that Scottsdale was told at an early stage of the summary judgment proceedings that the first Picucci affidavit was insufficient to create a presumption of delivery by mail, a message that was given to Scottsdale more than once before the court ruled on July 22, 2003, that, indeed, the affidavit was insufficient.

Nor can Scottsdale find comfort in the fact that the court initially denied Sessions's motion for summary judgment. On December 19, 2002, the court signed an order denying Sessions's motion, without explanation. However, by order signed July 7, 2003, the court, based on the summary judgment record then before the court and prompted by a request made by Sessions that the ruling on his motion for summary judgment be reconsidered on the basis of the complete summary judgment record, set aside the order denying Sessions's motion, explaining that "[t]he court has determined to grant [Sessions's] request so that the entire record now before the court can be taken into account in determining whether either party to this action is entitled to a judgment as a matter of law on the record that now exists." 7/7/03 Order at 2. Scottsdale made no request to supplement the summary judgment record in response to that order.

After having considered the factors appropriate to be considered in striking the proper balance between the competing interests mentioned in *Lavespere, supra* at 496, the court has concluded not to give consideration to the belatedly submitted second affidavit of Picucci. Scottsdale's tender of evidence after the court's summary judgment rulings is but a transparent effort to avoid those rulings. The

---

**3.** This document was not paginated. Again, the record reference is derived from a page count, this time starting with the first page of the document.

information in the newly tendered affidavit clearly was available to Scottsdale throughout the extensive summary judgment proceedings in this case. Whatever importance the new information might have had to Scottsdale, Scottsdale was aware of that importance long before the court ruled on the motions for summary judgment. If the court were to permit the new affidavit to be filed at this time, Sessions would suffer unfair prejudice. He and his attorney would be exposed to another cycle of discovery, testing the integrity of the new information, and required to conduct further research and do further briefing. Nor should the court be required to devote further resources to the issues related to Scottsdale's contention that it delivered a notice of cancellation by mail to the licensing agency. The court has already devoted significant time to plowing that ground as it existed in the form of the summary judgment record before the court when the summary judgment rulings were made on July 22.

Because of the court's decision not to consider the new Picucci affidavit as summary judgment evidence, the court has not fully evaluated the effect, if any, it would have on the outcome if it were to be considered. However, the court tentatively has concluded that this affidavit would not change the outcome because it does not appear to provide proof of the quality required by Texas law to create a presumption of delivery by mail. *See supra* at 497. *See also, State & County Mut. Fire Ins. Co. v. Williams*, 924 S.W.2d 746, 749 (Tex. App.—Texarkana 1996, no writ) (reiterating the Texas rule that "[w]hen the sender relies on office custom to raise a rebuttable presumption of mailing, she must offer corroborating evidence to support the inference that the custom was actually carried out").

### B. *The New Reasons Scottsdale Presents Why Sessions Is Not Entitled to Collect the Full Amount of the State Court Judgment.*

Scottsdale re-urges in its August 1 motions its reliance on *State Farm Fire & Casualty Co. v. Gandy*, 925 S.W.2d 696 (Tex.1996), as a reason why there is a fact question as to damages recoverable by Sessions. The court dealt with that contention in its July 22, 2003, memorandum opinion and order, *see* Mem. Op. & Order of 7/22/03 at 15–20; and, the court is satisfied that its conclusions on the subject are correct.

In its August 1 motions, Scottsdale argues for the very first time (1) that the state court judgment contains an award to Kristy Williams, individually, in addition to its award to Sessions (through Kristy Williams, as his next friend), with the consequence that, according to Scottsdale, "there is a fact issue as to what portion of the judgment is related to Davansha Sessions such that he may recover it," Scottsdale's Br. in Supp. of 8/1/03 Mots. at 9–10, and (2) that the amount of damages Sessions is entitled to recover from Scottsdale should be reduced by a settlement payment he received from other parties, *id.* at 10–11.

The court has concluded that, consistent with the rule expressed in *Simon v. United States, supra* at 495, the court should not consider these new arguments. They are defensive grounds that could, and should, have been raised before the court ruled on the motions for summary judgment. Moreover, the first of these new grounds is inconsistent with assertions Scottsdale made to the court in its summary judgment papers.

Sessions made known when he filed his motion for summary judgment on November 15, 2002, his contention that the full

amount of the state court judgment was his, alleging in his motion that:

> On July 19, 1997, the Defendant, Davansha Sessions, obtained a judgment in his favor and against Standard Hodges and Standard Security Services for the event involving Torin Wheeler on October 24, 1993 in the amount of $125,668.72 plus 10% simple interest per year thereafter until fully paid; . . . .

Sessions's Mot. for Summ. J. at 2 (footnote omitted). At no time during the summary judgment proceedings did Scottsdale take issue with that assertion. To the contrary, Scottsdale made statements in its summary judgment papers suggesting that it agreed that the entire amount of the judgment belonged to Sessions. In Scottsdale's motion for summary judgment, it alleged that it filed this action seeking a declaration that it had no liability "arising out of the judgment taken by Sessions." Scottsdale's Mot. for Summ. J. at 3. More to the point, Scottsdale explained to the court in its brief in support of its motion for summary judgment that "Sessions, through his mother and next friend Kristi Williams took the default judgment in July 1997 . . . ." Scottsdale's Br. in Supp. of its Mot. for Summ. J. at 11.[4] The court was entitled to accept Scottsdale's concessions in making rulings on the motions for summary judgment and in deciding on the effect to be given to the poorly drawn state court judgment.

Because the court is not considering the new grounds urged by Scottsdale in opposition to Sessions's claim for recovery, the court correspondingly declines to consider as part of the summary judgment record the new items (Item Nos. 3–6) that appear to have been tendered as evidentiary support for the new grounds.

The excuses Scottsdale gives for not presenting at an earlier date the grounds of defense to Sessions's claims that are now under discussion, and the related evidentiary items, are as follows:

> There was no reason for Scottsdale to raise any of these fact issues or file additional factual materials with the Court after the Court denied Sessions' Motion for Summary Judgment as they would not have been relevant to Scottsdale's Motion for Summary Judgment. Sessions' [sic] never filed a second motion for Summary Judgment, to which Scottsdale would have responded, even after the Court inquired about Sessions' intention to do so.

Scottsdale's Suppl. Br. in Supp. of 8/1/03 Mots. at 4 (footnote omitted). To the extent that this excuse is predicated on the court's denial in December 2002 of Sessions's motion for summary judgment, it lacks merit for the reasons previously explained. *Supra* at 499. Moreover, Scottsdale did respond to Sessions's motion for summary judgment; and, when it did, it omitted the arguments, grounds, and evidentiary material it now, for the first time, is asking the court to consider.

Scottsdale's backup contention that the newly presented grounds and evidence were not relevant to its own motion for summary judgment likewise lacks merit. While arguably the new grounds and evidence have no relevance to the grounds

---

4. Scottsdale alleged in its motion for summary judgment and supporting brief that "Williams and Sessions took a default judgment against Standard Security Services, which was signed on July 16, 1997." Scottsdale's Mot. for Summ. J. at 3; Scottsdale's Br. in Supp. of its Mot. for Summ. J. at 5. However, those assertions were followed by the explanation Scottsdale gave that the judgment was taken by Sessions through his mother and next friend, Kristy Williams. *Id.* at 11. Scottsdale never maintained in its summary judgment papers that Kristy Williams had any interest in the judgment other than as next friend for Sessions.

raised by Scottsdale in its motion for summary judgment, they certainly have relevance to the issue of whether Sessions is entitled to recover based on the state court judgment. The grounds under discussion logically would have been urged by Scottsdale in support of its motion for summary judgment if they had merit. In any event, Scottsdale had ample opportunity to urge those grounds in opposition to Sessions's motion for summary judgment before the court ruled on both motions on July 22.

### IV.

### *ORDER*

For the reasons given above,

The court ORDERS that Scottsdale's motions for new trial or to alter or amend judgment be, and are hereby, denied.